# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

    Petitioner,

:

    -vs-

:

DAVID BOBBY, Warden,

    Respondent.

:

Case No. 2:10-cv-391

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

## DECISION AND ORDER DENYING PETITIONER'S MOTION FOR DISCOVERY

This capital habeas corpus case is before the Court on Petitioner's Motion for Discovery (Doc. No. 60), Respondent's Opposition (Doc. No. 61), and Petitioner's Reply Memorandum in Support (Doc. No. 65).  Petitioner also renews his March 12, 2013, Motion to Conduct Discovery and/or for an Order Requiring Retention and Preservation of Evidence (Doc. No. 50). The first branch of that Motion was previously denied and the second branch granted (Order, Doc. No. 53).

The discovery now sought is described as follows:

1. Depositions of Donald Langbein, Shannon Williams (a.k.a. "Puff"), and Daniel F. Ozbolt, in support of the Fifteenth Ground for Relief

2. Records deposition to obtain all files concerning Donald Langbein in the possession of the Franklin County Prosecutor's Office

3. Records deposition to obtain all files concerning Donald Langbein in the possession of the Franklin County Sheriff's Office and the Columbus Police Department

4. Records deposition to obtain all files concerning Donald Langbein in the possession of the Federal Bureau of Alcohol, Tobacco, and Firearms

5. Records deposition to obtain all files concerning Shannon Williams (a.k.a. "Puff), in the possession of the Franklin County Prosecutor's Office

6. Records deposition to obtain all files concerning Shannon Williams (a.k.a. "Puff), in the possession of the Franklin County Sheriff's Office and the Columbus Police Department

7. Records deposition to obtain all files concerning Shannon Williams (a.k.a. "Puff), in the possession of the Federal Bureau of Alcohol, Tobacco, and Firearms

8. Access to all materials that the State's experts relied upon in conducting ballistics analyses

9. Access to all materials that the State's experts relied upon in conducting forensics analyses

10. The information requested in Doc. No. 50 and ordered preserved in Doc. No. 53.

These items will be referred to hereinafter as "Requests No. 1-10."  Request No. 10 was acceded to by Respondent subject to issuance of an appropriate protective order and petitioner's counsel acknowledge receiving it (Reply, Doc. No. 65, PageID 7976-77.)

## Habeas Corpus Discovery Standard

A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion.  Rule 6(a), Rules Governing § 2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000).  Before determining whether

discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied,* 537 U.S. 831 (2002), *citing Murphy v. Johnson,* 205 F.3d 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004), *quoting Stanford*, 266 F.3d at 460.

Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005), *citing Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Williams,* 380 F.3d at 974*, citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

In conducting the analysis that led to granting discovery in *Bracy v. Gramley, supra*, the Supreme Court provided at least part of the template which lower courts should follow in deciding discovery motions in habeas corpus cases.

First of all, it identified the claims to which the sought discovery in that case related and specifically determined whether they were claims upon which habeas corpus relief could be granted at all. Federal habeas corpus is, of course, available only to correct wrongs of constitutional dimension. 28 U.S.C. § 2254(a); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). In *Bracy* the claim was that the trial judge was biased in favor of

3

other defendants who had bribed him and therefore had a motive to be harsh with those, like the petitioner, who had not. The Supreme Court distinguished this kind of claim of judicial disqualification from other non-constitutional claims which would not be cognizable in habeas corpus. This part of the *Bracy* analysis makes it clear that discovery should not be authorized on allegations in a habeas corpus petition which do not state a claim upon which habeas corpus relief can be granted.

Secondly, the Supreme Court identified circumstances which corroborated Bracy's theory of relief and request for discovery:

> As just noted above, petitioner's attorney at trial was a former associate of Maloney's, App. 51, and Maloney [the corrupt trial judge] appointed him to defend this case in June 1981. The lawyer announced that he was ready for trial just a few weeks later. He did not request additional time to prepare penalty-phase evidence in this death penalty case even when the State announced at the outset that, if petitioner were convicted, it would introduce petitioner's then-pending Arizona murder charges as evidence in aggravation. Tr. of Oral Arg. 43. At oral argument before this Court, counsel for petitioner suggested, given that at least one of Maloney's former law associates--Robert McGee--was corrupt and involved in bribery, see supra, at 8, that petitioner's trial lawyer might have been appointed with the understanding that he would not object to, or interfere with, a prompt trial, so that petitioner's case could be tried before, and camouflage the bribe negotiations in, the Chow murder case. Tr. of Oral Arg. 17-18, 43-44. [FN11] This is, of course, only a theory at this point; it is not supported by any solid evidence of petitioner's trial lawyer's participation in any such plan. It is true, however, that McGee was corrupt and that petitioner's trial coincided with bribe negotiations in the Chow case and closely followed the Rosario murder case, which was also fixed.

520 U.S. 907-908.

> We emphasize, though, that petitioner supports his discovery request by pointing not only to Maloney's conviction for bribe taking in other cases, but also to additional evidence, discussed above, that lends support to his claim that Maloney was actually biased in petitioner's own case. That is, he presents "specific

4

> allegations" that his trial attorney, a former associate of Maloney's in a law practice that was familiar and comfortable with corruption, may have agreed to take this capital case to trial quickly so that petitioner's conviction would deflect any suspicion the rigged Rosario and Chow cases might attract.

*Id*. at 909.  The quoted "specific allegations" language is from *Harris v. Nelson, supra,* and demonstrates that the Supreme Court in both cases was adverting not to the **claim** language in the habeas petition, but to specific **evidence** obtained outside the discovery process and presented in support of a motion for discovery, which corroborates the claimed constitutional violation.

## Application to this Case

### In General

Bethel asserts (Motion, Doc. No. 60, PageID 7925-26) that he is entitled to the requested discovery under *McCleskey v. Zant*, 499 U.S. 467 (1991).  In *McCleskey* the Supreme Court interpreted the abuse of writ language in Rule 9(b) of the Rules Governing § 2254 Cases before it was amended to reflect adoption of the AEDPA.  *McCleskey* contains no language interpreting Rule 6 on discovery or suggesting that discovery should somehow be more expansive on a first habeas petition in support of counsels' obligation to include all cognizable claims in a first petition.

Bethel also alleges that "[i]n state court [he] diligently pursued his right to gather facts and evidence to support his constitutional claims" and "Bethel was diligent in asking for discovery in state court.  In light of the prosecution's suppression of key evidence, Bethel sought discovery through records and depositions."  (Motion, Doc. No. 60, PageID 7926 & 7938).  This segment

5

of the Motion is completely devoid of any description of that effort or any record references to show what effort was made.  The state court record in this case consists of more than 6,500 pages.  Bethel's diligence claim amounts to saying "It's in there somewhere, Judge, if you just look for it."  In deciding summary judgment motions, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990).  There is no good reason why judges in capital cases should have to search far larger records to find evidence to support claims.

Instead of providing record references, Bethel's counsel quote from Judge Tyack's opinion on appeal from denial of his petition for post-conviction relief.  *State v. Bethel*, 2008 Ohio 2697, 2008 Ohio App. LEXIS 2322 (10th Dist. 2008).  The opinion does not describe Bethel's efforts to obtain new evidence, but rather holds that a petitioner for post-conviction relief under Ohio Revised Code § 2953.21 is not automatically entitled in to conduct discovery under the Ohio Rules of Civil Procedure.  Bethel's counsel had argued this limitation was a denial of equal protection and due process.  The Tenth District considered itself bound by precedent to refuse to reach the merits of that argument. *Id.* ¶ 25.  In any event, the Tenth District's opinion supports a conclusion of lack of diligence because an Ohio post-conviction petitioner must present sufficient documentary evidence *dehors* the record to show entitlement to a hearing. *State v. Jackson,* 64 Ohio St. 2d 107 (1980).

**Fifteenth Ground for Relief:  *Brady* Claim**

Requests 1-7 are made in support of Bethel's Ground for Relief Fifteen which is as

follows:

> **Fifteenth Ground for Relief:**  Bethel was denied due process and a fair trial under the Sixth and Fourteenth Amendments when the State failed for provide him with favorable evidence that was material to his defense.

(Amended Petition, Doc. No. 48, PageID 650).

On June 26, 1996, the bodies of James Reynolds and his girlfriend Shannon Hawks were discovered in a field owned by the grandfather of Jeremy Chavis. *State v. Bethel*, 2010 Ohio 3837, ¶ 3, 2010 Ohio App. LEXIS 3242 (Ohio App. 10th Dist. 2010)(hereinafter *Bethel New Trial Appeal*). Reynolds had been an eyewitness to the murder of Rodney Cain by Tyrone Green; Reynolds and Hawks were killed about four weeks after discovery materials disclosing Reynolds' knowledge of Green's shooting Cain had been sent to Green's attorney. *Id.*

Bethel and Jeremy Chavis were indicted for aggravated murder with capital specifications for the Reynolds-Hawks murders in November 2000, more than four years after they happened. *Id.* at ¶ 4. Bethel reached a plea agreement with the State under which he would testify against Chavis in return for dismissal of the capital specifications and made a proffer of what his testimony would be. *Id.* When the time came to testify against Chavis in November 2001, Bethel refused to do so, his plea was set aside, and he was tried and convicted capitally of the Reynolds-Hawks murders. *Id.* at ¶ 6. Having failed to suppress the proffer, Bethel repudiated it at his trial and claimed he had lied to obtain the benefit of the plea bargain. *Id.* at ¶ 7. At Bethel's trial the proffer account of what happened was confirmed by Donald Langbein. *Id.*

Hired by Bethel's mother in September 2008, private investigator Martin Yant made a public records demand on the Columbus Police and obtained, on November 4, 2008, a report of

Alcohol, Tobacco, and Firearms ("ATF") Special Agent Daniel Ozbolt dated November 13, 2000, of an interview with ATF informant Shannon Williams on November 9, 2000 (Yant Affidavit, Doc. No. 11-1, PageID 187). Ozbolt reported

> Williams stated that recently, an inmate [of the Franklin County Jail where Williams was also incarcerated] by the name of Langbein was locked up in the County Jail, and that Langbein told Williams that Agent Ozbolt arrested him. Williams stated that Langbein told him that he was involved in a homicide with an individual who is now incarcerated at the Federal Penn. Ashland, KY, where the victim was shot seventeen times. Williams added that Langbein said that the other individual who was arrested was the driver following this homicide. Williams knew of no other details, and said he'd keep his ears open for further information.

(Attachment to Doc. No. 60, PageID 7941; hereinafter the ""Ozbolt Report".)

Bethel claims the Ozbolt Report should have been disclosed to his trial attorneys under *Brady v. Maryland*, 373 U.S. 83 (1963). To that end, he filed a Motion for New Trial Based on Newly Discovered Evidence in the Franklin County Common Pleas Court on April 13, 2009 (Doc. No. 11-1, PageID 177, *et seq*.)[1] The Ozbolt Report was made as a part of the ATF file on the investigation of Jeremy Chavis. Bethel's trial attorneys, Richard Ketcham and Kirk McVay, both knew Chavis to be Bethel's co-defendant in this case and that he was incarcerated at FCI Ashland (Ketcham and McVay Affidavits attached to Motion for New Trial, Doc. No. 11-1, PageID 190-197). Both aver in their Affidavits that they would have used the Ozbolt Report if they had known about it at the time of trial to cross-examine Donald Langbein and would have investigated Shannon Williams. *Id.*

Judge Richard Frye of the Franklin County Common Pleas Court denied the Motion for New Trial September 3, 2009 (Decision, Doc. No. 11-1, PageID 199-208). Judge Frye noted

---

[1] This Court stayed the instant habeas corpus case on September 2, 2010, at Bethel's request to permit exhaustion of this new trial motion (Doc. No. 13). The case remained stayed until Bethel notified this Court on September 5, 2012, that the Fifteenth Ground for Relief was then exhausted (Doc. No. 36).

8

that under Ohio law, "[t]he allowance of the new trial . . .is bottomed on the proposition that the new evidence uncovered could not have been discovered and produced at the trial by the exercise of reasonable diligence." *Id.* at PageID 203, *quoting State v. Townsend*, 2008 Ohio 6518, ¶ 12, 2008 Ohio App. LEXIS 5396 (10th Dist. 2008), *quoting State v. Sheppard*, 100 Ohio App. 399, 404 (8th Dist. 1955). He found that Bethel had not shown by clear and convincing evidence that he was unavoidably prevented from discovering the Ozbolt Report either between the trial and November 2008, or even between then and the time when the motion for new trial was filed in April, 2009.[2] He noted that the focus of the Report was Chavis and that Bethel is not mentioned in it and "[i]t requires speculation to conclude that the murder mentioned in the ATF Report was one of the two murders in this case." *Id.* at PageID 203. Williams said the murder about which Langbein was talking involved seventeen shots, but only fourteen shots were involved in Bethel's case, ten into Reynolds and four into Hawks. *Id.* at PageID 204. Bethel himself had testified that Chavis, the man at FCI Ashland, was a shooter in the Reynolds-Hawks murders, and not just a driver. *Id.* at PageID 205. Judge Frye found the claim was procedurally defaulted "by delay in bringing it and by the inadequacy of the record tendered about how it might have fit in to the investigation work done prior to and immediately after the jury trial." *Id.*

Apart from procedural default, Judge Frye also decided the merits of Bethel's *Brady* claim, applying the Sixth Circuit's recent decision in *Irick v. Bell,* 563 F.3d 315 (6th Cir. 2009). He found there was no evidence the Ozbolt Report was either intentionally or negligently suppressed by the Columbus Police. (Decision, Doc. No. 11-2, PageID 206). He also found it was not material:

---

[2] Ohio law provides a 120 day limit on motions for new trial based on newly discovered evidence unless the defendant was unavoidably prevented from discovering the evidence. Ohio R. Crim. P. 33(C). More than 120 days expired between Yant's discovery of the Ozbolt Report and the filing of the motion for new trial.

> The ATF Report could not have been direct, substantive evidence. At most, it would have provided some slight additional basis for vigorous cross-examination of Langbein. It did not plainly contradict what he said because of the factual variances between the murder he described and this case. It was not good impeachment material because of the layers of hearsay in it. But, the more important point is that Bethel's trial lawyers already had every incentive to portray Langbein as an untrustworthy felon who cooperated with police only to benefit himself by wearing a wire and coaxing Bethel to make incriminating statements. No new avenue was suggested by the ATF Report on how to convincingly attack Langbein.
>
> Langbein's alleged jailhouse statement to Williams occurred more or less contemporaneously with the taped statements by Bethel. Events in that time period already were a key focus of Bethel's trial. Nothing in the ATF Report negates Bethel's own statements made in his proffer or made to Campbell, in which he unequivocally admitted killing Reynolds and Hawks with a 9 mm handgun. As mentioned above, closely viewed Langbein's alleged statement described a substantially different murder, albeit possibly also involving Bethel's co-defendant Chavis as the driver. Bethel's trial involved two victims - one shot ten times, the other shot four times. The crime Langbein allegedly described to Williams involved one victim shot seventeen times. Bethel was the driver of the victims in this case, not Chavis. 110 Ohio St.3d at 418, ¶¶ 8, 43.
>
> Considering the entire record, including Bethel's own statements admitting to killing Reynolds and Hawks and the material variance between the alleged crime memorialized in the ATF Report and the crimes as they occurred here, a new trial for Bethel would not be appropriate. The court's confidence in the outcome of defendant Bethel's trial has not been undermined.

*Id.* at PageID 206-07.  Judge Frye's Decision was affirmed by the Franklin County Court of Appeals.  *Bethel New Trial Appeal, supra.*  The Ohio Supreme Court declined to exercise jurisdiction.  *State v. Bethel*, 132 Ohio St. 3d 1513 (2012).

On the basis of his claim that the Ozbolt Report constitutes *Brady* material, Bethel seeks records depositions of the Franklin County Prosecutor's Office, the Franklin County Sheriff's

Office, the Columbus Police Department, and the Federal Bureau of Alcohol, Tobacco, and Firearms[3] for all files concerning Donald Langbein and Shannon Williams and oral depositions of Langbein, Williams, and Ozbolt (Motion, Doc. No. 60, PageID 7927-28.)  The argument seems to be that since one item of *Brady* material was found in the Columbus Police files, there must be more and Bethel's counsel will find it if allowed to use the subpoena power of the federal court to get it.

First of all, the premise is wrong.  The Ohio courts, applying the relevant federal case authority, determined that the Ozbolt Report is not *Brady* material.  When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Bethel has not demonstrated that Judge Frye's application of *Brady* is objectively unreasonable.

Second, even if the Ozbolt Report were *Brady* material, its existence would not imply the existence of other *Brady* material in the places Bethel wants to search.  Mr. Yant, Bethel's private investigator, received over 1,200 pages from the Columbus Police Department[4], but only found two pages which were arguably *Brady* material.

Third, because ATF is a federal law enforcement agency, nothing in its files would be *Brady* material.  The claim with respect to the Ozbolt Report is only arguable because someone at some time between November 2000 and November 2008 sent it to the Columbus Police.

---

[3] Bethel places no geographic limits on the ATF files to be searched.
[4] The Court is not advised of the scope of Mr. Yant's request.

11

Bethel's Requests 1 through 7, which relate to his Fifteenth Ground for Relief, are DENIED.

**Eighteenth Ground for Relief**

In his Eighteenth Ground for Relief, Bethel claims he was denied the effective assistance of trial counsel when they did not obtain expert witnesses.

> **Eighteenth Ground for Relief**: Bethel's counsel performed ineffectively, to his prejudice, during the culpability phase of his capital trial, violating his rights under the Sixth and Fourteenth Amendments.

*Id.* at PageID 662.  Requests 8 and 9 are made in support of this Ground for Relief; Bethel seeks to obtain, for re-analysis by his own experts, all of the material relied on by the State's experts for their ballistics and forensic analyses.

As Bethel explains his position, his "trial strategy was to show that [his] proffered statement was false, given by a desperate young man who had found himself in the position where the only way to avoid the death penalty was to take a plea." (Motion, Doc. No. 60, PageID 7931.)  At trial, counsel argued the confession, made in August 2001, was inconsistent with the physical evidence created at the time of the murders.  *Id.*  Bethel now claims that "[a] ballistics expert and a forensic pathology expert were critical to showing the jury that Bethel's proffered statement did not match the physical evidence." *Id.*

The claim here is not that the trial attorneys did not recognize the need for experts, but that the state trial court refused to fund the requested experts.  Counsel asserts "Bethel never obtained the expert analyses he deserves, because although he diligently asked the state courts

12

for funding for these experts, his requests were denied." Immediately following that claim, the reader would expect to find citations to the record to the places where the requests were made and where the trial judge denied them. But as with the Fifteenth Ground for Relief, there are no record references.

As the Warden notes, the claim of ineffective assistance of trial counsel for failure to obtain experts was raised on direct appeal. The Ohio Supreme Court held:

> [**P168] Bethel contends that his trial counsel were ineffective because they failed to obtain defense experts on false confessions, ballistics, forensics, and crime-scene reconstruction. We find that Bethel was not prejudiced by trial counsel's actions. In *State v. Madrigal* (2000), 87 Ohio St.3d 378, 2000 Ohio 448, 721 N.E.2d 52, we rejected a similar claim that counsel should have obtained an expert on eyewitness identification: "[R]esolving this issue in Madrigal's favor would be purely speculative. Nothing in the record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record * * *. Such a claim is not appropriately considered on a direct appeal." Id. at 390-391, 721 N.E.2d 52.

*State v. Bethel*, 110 Ohio St. 3d 416, ¶ 168. The claim was again raised in post-conviction, as the Ohio Supreme Court suggested it should be. However, the Tenth District Court of Appeals held:

> [*P2] We are not at liberty to re-decide any issues that were already decided by the Supreme Court of Ohio unless the appellant presents some new evidence or factual information that was unavailable on direct appeal. Similarly, any argument that was previously raised, or could have been raised, is barred under the doctrine of res judicata. The record before us is void of any new evidence or factual information that would be material to the issues raised in the petition and, therefore, we must affirm the trial court's dismissal.
>
> * * *
>
> [*P45] The fifth ground for relief alleges that trial counsel was ineffective in failing to acquire a ballistics expert who would testify that the details of the homicide provided in Bethel's proffer

13

> statement were inaccurate, and that Bethel was therefore lying when he confessed to the murders.
>
> **[*P46]** Trial counsel argued, extensively, the issue of Bethel's proffered confession being inconsistent with the physical evidence. Bethel recorded the proffer years after the homicides. Thus, whether some details in Bethel's proffer did not squarely match up with evidence at the murder scene is not itself dispositive of the general reliability or truthfulness of the statement. One remembers the most "important" part--that you murdered two people--without necessarily remembering all the details about how and when one fired each shot. Thus, counsel's failure to engage the opinion of a ballistics expert did not constitute ineffective assistance of counsel.
>
> **[*P47]** The sixth ground for relief parallels the fifth in many regards. Bethel alleges that trial counsel was ineffective because counsel did not engage a forensic pathologist to highlight the differences between Bethel's proffer and the evidence at the murder scene. This ground for relief has no merit for the same reasons as the fifth.

*State v. Bethel,* 2008 Ohio 2697, ¶¶ 2, 45-47, 2008 Ohio App. LEXIS 2322 (10th Dist. 2008).

Whatever claim Bethel had that the state trial judge had forced his trial counsel to be ineffective by refusing to fund ballistics and forensics experts would have been part of the record on direct appeal and thus available to raise either as a trial court error or as a "forced" ineffective assistance of trial counsel claim. It was raised as an ineffective assistance of trial counsel claim and decided on the merits by the Ohio Supreme Court which found no proof of prejudice and therefore no ineffective assistance of trial counsel under the second prong of *Strickland v. Washington,* 466 U.S. 668 (1984). If, conversely, the claim relied on evidence *dehors* the record, that could have been submitted in post-conviction and would not have been barred by *res judicata*. Certainly if trial counsel believed their defense was hamstrung by the lack of expert witnesses, their own affidavits to that effect could have been submitted in post-conviction. But as the Court of Appeals found, no new evidence was submitted, but only the claim that Ohio's refusal of civil discovery in post-conviction is unconstitutional.

Thus it appears to the Court that the Eighteenth Ground for Relief is barred by the Ohio Supreme Court's objectively reasonable application of *Strickland* or by Bethel's procedural default in presenting the claim in post-conviction.

A habeas petitioner cannot show good cause to conduct discovery on claims on which he cannot obtain habeas relief. Therefore, Bethel's Motion for Discovery is DENIED.

December 23, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge
