# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

      Petitioner,

:

Case No. 2:10-cv-391

:

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

   -vs-

DAVID BOBBY, Warden,

:

      Respondent.

# SUPPLEMENTAL OPINION ON PETITIONER'S MOTION FOR DISCOVERY

This capital habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 70) to the Magistrate Judge's Decision and Order Denying Discovery ("Decision," Doc. No. 69). District Judge Barrett has recommitted the matter to the Magistrate Judge for reconsideration in light of the Objections (Doc. No. 72). Although Respondent took an extension of time to respond to the Objections (Doc. No. 71 and notation order granting), none has been filed.

The discovery sought by Bethel was described in the Decision as follows:

1.    Depositions of Donald Langbein, Shannon Williams (a.k.a. "Puff"), and Daniel F. Ozbolt in support of the Fifteenth Ground for Relief;

2.    Records deposition to obtain all files in the possession of the Franklin County Prosecutor's Office concerning Donald Langbein;

3.    Records deposition to obtain all files in the possession of the Franklin County Sheriff's Office and the Columbus Police Department concerning Donald Langbein;

4.    Records deposition to obtain all files in the possession of the Federal Bureau of Alcohol,

1

Tobacco, and Firearms concerning Donald Langbein;

5. Records deposition to obtain all files in the possession of the Franklin County Prosecutor's Office concerning Shannon Williams (a.k.a. "Puff");

6. Records deposition to obtain all files in the possession of the Franklin County Sheriff's Office and the Columbus Police Department concerning Shannon Williams (a.k.a. "Puff");

7. Records deposition to obtain all files in the possession of the Federal Bureau of Alcohol, Tobacco, and Firearms concerning Shannon Williams (a.k.a. "Puff");

8. Access to all materials that the State's experts relied upon in conducting ballistics Analyses;

9. Access to all materials that the State's experts relied upon in conducting forensics Analyses; and

10. The information requested in Doc. No. 50 and ordered preserved in Doc. No. 53.

These items were described in the Decision as Requests No. 1-10 and these same references will be used here. Request No. 10 is no longer in issue.

**Standard of Review**

As Petitioner notes, a motion for discovery in a habeas corpus case is a non-dispositive pretrial motion which a magistrate judge has authority to decide, subject to review by the District Judge to whom the case is assigned. Fed. R. Civ. P. 72(a) provides "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Whether to grant discovery in a habeas case is neither a fact question, reviewable for clear error, nor a purely legal question, reversible if "contrary to law."

Rather a habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing § 2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000). "An abuse of discretion occurs if the [deciding judge] relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 678 F.3d 409, 416 (6th Cir. 2012). A reviewing court will reverse for abuse of discretion only if it is left with a definite and firm conviction that the trial court committed a clear error of judgment. *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996); *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

In deciding a nondispositive matter, the magistrate judge is exercising the discretion granted the court under either statute or rules, review is for abuse of discretion. *Snowden v. Connaught Laboratories*, 136 F.R.D. 694, 697 (D. Kan. 1991); *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 154 (W.D.N.Y. 1982); *Doe v. Marsh,* 899 F. Supp. 933, 934 (N.D.N.Y. 1995); *Commodity Futures Trading Comm'n v. Standard Forex, Inc.,* 882 F. Supp. 40, 42 (E.D.N.Y. 1995); *Bass Public Ltd. Co. v. Promus Cos., Inc.*, 868 F. Supp. 615, 619 (S.D.N.Y. 1994); *In re Application for Order for Judicial Assistance in Foreign Proceedings,* 147 F.R.D. 223, 225 (C.D. Cal. 1993); *Schrag v. Dinges,* 144 F.R.D. 121, 123 (D. Kan. 1992).

**Specific Objections**

**Effect of the State Court Rulings on Bethel's *Brady v. Maryland* Claim**

Bethel's Requests No. 1-7 are in support of his Fifteenth Ground for Relief made under *Brady v. Maryland*, 373 U.S. 83 (1963).

> **Fifteenth Ground for Relief:** Bethel was denied due process and a fair trial under the Sixth and Fourteenth Amendments when the State failed for provide him with favorable evidence that was material to his defense.

(Amended Petition, Doc. No. 48, PageID 650). A document known as the Ozbolt Report prepared by ATF Special Agent Daniel Ozbolt was obtained by Bethel through a public records demand in November 2008. Based on a claim that the Ozbolt Report constitutes *Brady* material, Bethel filed a new trial motion in the Franklin County Common Pleas Court which was denied September 3, 2009 (Doc. No. 11-1, PageID 199-208). Judge Frye decided both that Bethel's new trial claim was untimely[1] and that the Ozbolt Report was not *Brady* material. *Id.* at PageID 206. The court of appeals affirmed this decision. *State v. Bethel*, 2010-Ohio-3837, ¶ 3, 2010 Ohio App. LEXIS 3242 (10th Dist. 2010)(in the Decision and hereinafter *Bethel New Trial Appeal*).

Bethel claims both that the Ozbolt Report is *Brady* material and that the material he will discover if Requests No. 1-7 are granted will also be *Brady* material. The Decision held that Judge Frye's conclusion that the Ozbolt Report was not *Brady* material was entitled to AEDPA deference and that precluded relying on it to support additional discovery (Decision, Doc. No. 69, PageID 8303).

Bethel asserts, without showing any of the reasoning behind the assertion, that requiring him to show Judge Frye's decision is objectively unreasonable subjects him to a "higher standard" than the good cause standard of Habeas Rule 6 (Objections, Doc. No. 70, PageID

---

[1] Bethel had not shown by clear and convincing evidence that he was prevented from discovering the Ozbolt Report between trial and November 2008 or when the new trial motion was filed in April 2009. *Id.* PageID 203.

8310). Not so. The good cause standard under Habeas Rule 6 cannot be extracted from its context to stand alone. There can only be good cause to discover evidence in support of a claim which ultimately can prevail in habeas corpus. *Bracy v. Gramley*, 520 U.S. 899 (1997), itself, holds that before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). The essential elements of a *Brady* claim are that the State has withheld material exculpatory evidence from a criminal defendant. Bethel relies on his claim that the Ozbolt Report is *Brady* material both substantively and as a premise for asserting that more *Brady* material will be found if he is permitted to search in places associated with the Ozbolt Report. The Decision merely holds that his premise is wrong: since the Ozbolt Report is not *Brady* material, its nondisclosure does not support an inference that there is other *Brady* material where it was found (Decision, Doc. No. 69, PageID 8303). This is not applying a "higher standard" than good cause, it is elucidating one way in which Bethel has failed to show good cause.

Bethel also objects to the Decision's reliance on Judge Frye's opinion rather than that of the Tenth District affirming Judge Fry (Objections, Doc. No. 70, PageID 8311-12). As the Decision notes, Judge Frye found that Bethel's new trial claim was procedurally barred and also without merit. Bethel appealed on both grounds and the court of appeals found the first assignment of error, dealing with the procedural default, was moot because it affirmed his ruling on the merits. *Bethel New Trial Appeal, supra,* at ¶ 16.

Bethel criticizes the Decision's reliance, in part, on Judge Frye's opinion because it was not "the last explained state-court judgment" on the new trial motion (Objections, Doc. No. 70, PageID 8311, citing *Ylst v. Nunemaker*, 501 U.S. 797, 805 (1991).) It is correct that the Bethel

New Trial Appeal decision is the last-reasoned state court opinion on the merits of Bethel's *Brady* claim and Bethel is correct that that is the decision which is entitled to AEDPA deference on the merits of his Ground Fifteen. But Judge Frye's decision is the last reasoned state court opinion on the procedural default of that claim; the court of appeals did not reverse his decision on that point, but found the assignment of error moot and went on to decide the merits of the *Brady* claim. Because of this decision on the merits, Bethel argues, there is no procedural default (Objections, Doc. No. 70, PageID 8312). Although a state court discusses the merits of a claim in the alternative, there can still be procedural default if the state court rules on the procedural ground. *Coe v. Bell,* 161 F.3d 320, 330 (6th Cir. 1998), *cert. denied,* 120 S. Ct. 110 (1999). In this case we have an unreversed, explained trial court ruling on the procedural issue and a court of appeals affirmance of the same trial court's ruling on the merits. It does not appear under those circumstances that the state courts have failed to enforce the relevant procedural rule.

Bethel also criticizes the Decision for stating he had not demonstrated Judge Frye's application of *Brady* was objectively unreasonable (Objections, Doc. No. 70, PageID 8311). Having made that correct point, Bethel then fails to even attempt to show that the court of appeals' decision on the merits of the *Brady* claim is objectively unreasonable. That decision was as follows:

> **[\*P17]** In his second assignment of error, appellant contends the trial court erred in denying his motion for new trial based on evidence material to his defense that was in the possession of the state prior to trial but not submitted to him until the fulfillment of the public records request. In *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L. Ed. 2d 215, the United States Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

[*P18] Evidence suppressed by the prosecution is "material" within the meaning of *Brady* only if there exists a "reasonable probability" that the result of the trial would have been different had the evidence been disclosed to the defense. *Kyles v. Whitley* (1995), 514 U.S. 419, 433-34, 115 S.Ct. 1555, 1566, 131 L. Ed. 2d 490; see also *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L. Ed. 2d 481. As the United States Supreme Court has stressed, "the adjective ['reasonable'] is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1555; see also *Strickler v. Greene* (1999), 527 U.S. 263, 289-90, 119 S.Ct. 1936, 1952, 144 L. Ed. 2d 286.

[*P19] Initially, we note it is not clear that the ATF report was "suppressed" by either the prosecution or the Columbus police. As noted by the trial court, there is no indication as to when this report, titled "CHAVIS, Jeremy" and making no reference whatsoever to appellant, came into the possession of the police department or when it was placed in connection with the file on appellant. However, assuming arguendo that the prosecution "suppressed" the report within the meaning of *Brady*, we find no reasonable probability of a different trial outcome had the defense received this report. Thus, we find no *Brady* violation and further find that appellant failed to meet the standard for a new trial.

[*P20] Though appellant's attorneys who ultimately tried the case stated in their affidavits that they had not heard of Williams in the context of appellant until seeing the ATF report, we note, as did the trial court, that Williams was named on the state's witness disclosure list. Thus, it is entirely possible that appellant's previous counsel, of which there were several, did investigate Williams and found him to be of no value to the defense.

[*P21] Additionally, it is wholly speculative as to whether Langbein's statements are referring to the homicides at issue here. Williams said Langbein stated he was involved in a homicide where the victim was shot 17 times. Here, there were two victims, one shot ten times, and the other shot four times. Also, Williams said Langbein stated the other person who was arrested was the driver after the homicide; however, according to appellant, Chavis was not a driver but an actual participant in the shootings. Appellant's version of events, that he used a 9mm while Chavis used a shotgun, correlates with the evidence presented at trial that

the victims suffered wounds consistent with those caused by a 9mm and a shotgun. Additionally, multiple 9mm shell casings and 12-guage shotgun casings were recovered from the scene.

**[\*P22]** Most importantly perhaps is that the evidence presented against appellant consisted of more than just his statements made to Langbein. The evidence also consisted of appellant's statements to Campbell and his own admission as contained in his proffer. Moreover, Langbein was extensively cross-examined at trial, wherein defense counsel tried to portray Langbein as one implicating appellant only to get a better deal on his federal firearms charge. Langbein was also questioned about having a grudge against appellant and being one of the persons involved in the planning of Reynolds' murder. Additionally, Langbein was questioned about a confrontation between Reynolds and another individual, Joey Green, in which Green threatened Reynolds causing Reynolds to expose a gun to Green. Thus, Langbein's cross-examination inferred that others, or even he, was the person who committed the homicides.

**[\*P23]** Lastly, we note the ATF report indicates that Langbein stated he was "involved" in a homicide. Assuming Langbein was referring to the Reynolds-Hawks murders, Langbein's statement still does not amount to a "confession" of murder as appellant claims. Langbein was involved in this matter as he had been working as an informant with authorities as early as July 2000. Langbein even wore a wire on several occasions in an attempt to obtain incriminating statements from appellant, and all of these meetings occurred prior to Williams contacting Agent Ozbolt on November 9, 2000.

**[\*P24]** In short, nothing in the ATF report "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435, 115 S.Ct. at 1555. Finding no *Brady* violation and finding the "newly discovered evidence" forming the basis of appellant's motion fails to satisfy the standard for a new trial, we find no error in the trial court's decision denying appellant's motion for a new trial. Accordingly, appellant's second assignment of error is overruled.

**[\*P25]** For the foregoing reasons, appellant's second assignment of error is overruled, appellant's first assignment of error is moot, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Bethel New Trial Appeal, supra.* The Objections contain not a shred of analysis as to how this

decision is an objectively unreasonable application of *Brady* or even of how the Tenth District's analysis on the merits differs from Judge Frye's.

Although conceding it is "relatively unimportant," Bethel's counsel think it is worth almost a page of the Objections to argue the Decision misunderstands Ohio R. Crim. P. 33(C)(Objections, Doc. No. 70, PageID 8312-13). At footnote 2 the Decision states

> Ohio law provides a 120[-]day limit on motions for new trial based on newly discovered evidence unless the defendant was unavoidably prevented from discovering the evidence. Ohio R. Crim. P. 33(C). More than 120 days expired between Yant's discovery of the Ozbolt Report and the filing of the motion for new trial.

The Magistrate Judge fully understands that Ohio law does not set a time limit on when a defendant may move for a new trial on the basis of newly-discovered evidence if unavoidably prevented from discovering it. *State v. Davis,* 131 Ohio St. 3d 1, 6-7 (2011). The point of the footnote is that if Bethel had discovered the new evidence in the first 120 days after the verdict, he would have been obliged to file by the 120th day, showing the amount of time Ohio courts consider reasonable for finding new evidence and bringing it to the trial court's attention. Here Bethel was so lacking in diligence or so indifferent to the delay involved that he did not even move for a new trial within the 120 days after he discovered Ozbolt Report, but instead waited from November 2008 until April 2009. Of course Judge Frye found a lack of reasonable diligence on Bethel's part.

**Federal Agency Report as *Brady* Material**

Bethel objects to the Decision's conclusion that "because ATF is a federal law

enforcement agency, nothing in its files would be *Brady* material." (Objections, Doc. No. 70, PageID 8313, quoting Decision, Doc. No. 69, PageID 8303.) Bethel asserts that because this was one investigation involving both state authorities and the ATF, the Ozbolt Report is not excluded from *Brady* (Objections, Doc. No. 70, PageID 8313-14). Bethel notes that the Ozbolt Report was produced to him from the Columbus Police Department, so it obviously was in that file by the time of the response to Bethel's public records request. But as Judge Frye and the Tenth District noted "there is no indication as to when this report, titled 'CHAVIS, Jeremy' and making no references whatsoever to [Bethel], came into the possession of the police department or when it was placed in connection with the file of [Bethel]." *Bethel New Trial Appeal, supra*, ¶ 19.

Bethel notes that the Supreme Court "grouped FBI documents into the materials it was considering as *Brady* material" (Objections, Doc. No. 70, citing *Cone v. Bell*, 556 U.S. 449, 464 (2009)). In footnote 11 to his opinion for the majority in that case, Justice Stephens wrote:

> In the course of federal habeas proceedings, Cone had obtained access to files from the Federal Bureau of Investigation where he found additional previously undisclosed evidence not contained in the state prosecutor's case file. The suppressed FBI documents make repeated reference to Cone's drug use and corroborate his expert's representation that he had used drugs during his prior incarceration for armed robbery. See App., at 26-28.

The Court did not hold that these documents were *Brady* material, and the fact that they had not been in the state prosecutor's case file supports the distinction made by the Ohio courts here between material in the prosecutor's file and material somehow related to a habeas petitioner which is in the files of a federal law enforcement agency. There is no indication of why the FBI had collected information on Cone's drug use or how that information came into the possession of Cone's habeas counsel.

Bethel relies on *California v. Trombetta*. 467 U.S. 479, 487-88 (1984), to collapse the distinction between state and federal law enforcement files. *Trombetta* does not support this point. The relevant language is

> One case in which we have discussed due process constraints on the Government's failure to preserve potentially exculpatory evidence is *Killian* v. *United States*, 368 U.S. 231 (1961). In *Killian*, the petitioner had been convicted of giving false testimony in violation of 18 U. S. C. § 1001. A key element of the Government's case was an investigatory report prepared by the Federal Bureau of Investigation.

*Id*. *Killian* obviously was a federal prosecution in which FBI documents, if containing exculpatory material, would have been disclosable under *Brady*. Nothing is said there about any duty of one sovereign to disclose material in the other sovereign's law enforcement files.

Finally, Bethel relies on *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), for the proposition that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Within the context from which the quotation is taken, Justice Souter is discussing the obligation of a state prosecutor to obtain *Brady* material from state police authorities. He outlines the contention of the State of Louisiana which the Court is rejecting:

> The State of Louisiana would prefer an even more lenient rule. It pleads that some of the favorable evidence in issue here was not disclosed even to the prosecutor until after trial, Brief for Respondent 25, 27, 30, 31, and it suggested below that it should not be held accountable under *Bagley* and *Brady* for evidence known only to police investigators and not to the prosecutor. To accommodate the State in this manner would, however, amount to a serious change of course from the *Brady* line of cases. In the State's favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that "procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it." *Giglio* v. *United States*,

> 405 U.S. 150, 154, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972). Since,
> then, the prosecutor has the means to discharge the government's
> *Brady* responsibility if he will, any argument for excusing a
> prosecutor from disclosing what he does not happen to know about
> boils down to a plea to substitute the police for the prosecutor, and
> even for the courts themselves, as the final arbiters of the
> government's obligation to ensure fair trials.

*Id.,* (footnote omitted). There is no suggestion that the state prosecutors are obliged to obtain material from federal law enforcement.[2]

All of the prior discussion in this section goes to the question, decided in the negative by the state courts, of whether the Ozbolt Report was "suppressed." Those courts also offered extended analysis of why the Ozbolt Report is not exculpatory, analysis which the Objections do not address. Bethel has failed to show that the Tenth District's analysis on this point is an objectively unreasonable application of *Brady*.

The Decision characterized Bethel's counsels' logic as follows: since the Ozbolt Report [which we assert is *Brady* material] was in the police file and was undisclosed, there must be more *Brady* material in the file. (Decision, Doc. No. 69, PageID 83030. The Objections respond, "Bethel's argument amounts to much more than this characterization of it." (Doc. No. 70, PageID 8314-15.) Bethel then recounts that Shannon Williams told Agent Ozbolt "he'd keep his ears open for further information. . . Bethel seeks that 'further information.'" *Id.* at 8315. Williams' statement is not evidence that "further information" exists, but a promise by a jailhouse informant[3] of continued cooperation. On the basis of this slim foundation, Bethel proposes to depose Langbein, Williams, and Ozbolt and examine "all files" relating to Langbein and Williams in the possession of the Columbus Police Department, the Bureau of Alcohol,

---
[2] Nor does Bethel cite any authority for the proposition that federal law enforcement authorities have a duty to disgorge their files to state prosecutors.
[3] Williams was incarcerated in the Franklin County Jail at the time he made the statement. *Bethel New Trial Appeal, supra,* ¶ 10.

Tobacco, and Firearms, the Franklin County Prosecutor, and the Franklin County Sheriff.

The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied,* 537 U.S. 831 (2002), *citing Murphy v. Johnson,* 205 F.3d 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004), *quoting Stanford*, 266 F.3d at 460. Bethel has not met this burden on Requests No. 1-7.

**Requests No. 8 and 9**

Bethel made his eighth and ninth requests in support of his Eighteenth Ground for Relief which reads:

> **Eighteenth Ground for Relief**: Bethel's counsel performed ineffectively, to his prejudice, during the culpability phase of his capital trial, violating his rights under the Sixth and Fourteenth Amendments.

(Petition, Doc. No. 7, PageID 112.)

Pursuant to a plea agreement, Bethel had made a proffer in which he admitted committing the two murders in this case. When it came time for him to carry out his part of the bargain and testify against the co-defendant, he repudiated his confession. At his trial, he attempted to show his confession was false by showing it was inconsistent with the physical evidence. Bethel seeks access to all materials that the State's experts relied upon in conducting ballistics or forensics analyses in order to prove his trial counsel were ineffective by not

obtaining experts to assist.

The Decision analyzed this as a claim that, while his trial attorneys recognized the need for such experts, the trial court refused funding (Decision, Doc. No. 69, PageID 8304-05.) The Objections assert this was a misreading of the claim (Doc. No. 70, PageID 8317.) To the contrary, the Decision quoted the following language from the Motion for Discovery: "Bethel has never obtained the expert analyses he deserves, because although he diligently asked the state courts for funding for these experts, his requests were denied." (Decision, Doc. No. 69, PageID 8304-05, quoting Motion, Doc. No. 60, PageID 7931.) Immediately following this language, the Decision chided Bethel's counsel for failing to provide any record references to the asserted diligent state court requests. Now, in their Objections, counsel repudiate the theory they initially set forth (which is still there in black and white at PageID 7931) and make a new claim that Ground Eighteen is about trial counsel "**not** recognizing the need for such experts." (Objections, Doc. No. 70, PageID 8317, emphasis in the original.) One wonders if counsel read the Motion before writing the Objections.

As the Decision notes, the claim of ineffective assistance of trial counsel on this basis was raised and decided against Bethel by the Ohio Supreme Court on direct appeal. (Decision, Doc. No. 69, PageID 8305, citing *State v. Bethel*, 110 Ohio St. 3d 416, ¶ 168.) On direct appeal, the Ohio Supreme Court called the claim "speculative" in the absence of additional evidence. *Id.* Bethel again raised the claim in post-conviction where the Tenth District held trial counsel were not ineffective for failing to hire the requested experts because (1) they extensively argued the inconsistencies of Bethel's confession with the physical evidence and (2) the inconsistencies were expectable, given that there were many years between the killings and the confession. *State v. Bethel*, 2008 Ohio 2697, ¶¶ 2, 45-47, 2008 Ohio App. LEXIS 2322 (10th Dist. 2008). The

court of appeals noted that no new evidence had been submitted in post-conviction.

The Objections fault the Decision for "finding that this claim should have been brought on direct appeal." (Objections, Doc. No. 70, PageID 8318.) To the contrary, what the Decision found was that the claim was in fact brought on direct appeal (Doc. No. 69, PageID 8305, citing *State v. Bethel*, 110 Ohio St. 3d 416, ¶ 168).[4] The Objections correctly note that the Ohio Supreme Court held a claim based on what the expert testimony would have been was not properly raised on direct appeal.

But when Bethel pursued post-conviction relief, the Decision found he added nothing to the record in support of these claims (See Decision, Doc. No. 69, PageID 8306). Bethel now objects that there was new evidence from a ballistics expert, John Nixon, and a forensic pathologist, Werner Spitz (Objections, Doc. No. 70, PageID 8318, citing Return of Writ, Appx. Doc. No. 54-9 at PageID 3002-10.) What the court of appeals held was "[t]he record before us is void of any new evidence or factual information that would be material to the issues raised in the petition . . . ." *State v. Bethel*, 2008 Ohio 2697, ¶ 2, 2008 Ohio App. LEXIS 2322 (10th Dist. 2008). In essence, the letters from Nixon and Spitz are not new evidence, but proposals to gather new evidence by conducting additional testing.

At this point Bethel has made no proffer of what new expert testing might be expected to reveal. They certainly have not shown that any results of such testing would be likely to support the Eighteenth Ground for Relief. The results of such testing could not be introduced in evidence here because of the bar of *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011), so this discovery request is in essence to obtain material which could be used to file another

---

[4] The suggestion about how the claim could have been raised on direct appeal was based on the understanding, quoted above, that the claim was counsel has asked for and been denied funds. The Decision noted that the Motion had given no record references to support that claim.

15

proceeding in the state courts.[5]

**Conclusion**

Upon reconsideration of the Motion for Discovery in light of the Objections, the Magistrate Judge again concludes Bethel has not shown good cause to pursue this discovery.

June 18, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

---

[5] Counsel does not discuss the *Pinholster* problem or what state court proceeding might be in contemplation.