# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

: 

    Petitioner,                                Case No. 2:10-cv-391

:           District Judge Michael R. Barrett

   -vs-                                Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

:

    Respondent.

## DECISION AND ORDER

This capital habeas corpus case is before the Court on Petitioner's Motion for an Evidentiary Hearing (ECF No. 88). The Warden opposes the Motion (Opposition, ECF No. 90) and Petitioner has filed a Reply Memorandum in support (Reply, ECF No. 91).

Petitioner seeks an evidentiary hearing on his Fifteenth Ground for Relief which reads: "Bethel was denied due process and a fair trial under the Sixth and Fourteenth Amendments when the state failed to provide him with favorable evidence that was material to his defense." (First Amended Petition, ECF No. 48, PageID 650.) The claim arises under *Brady v. Maryland*, 373 U.S. 83 (1963), and relates to a report from Agent Ozbolt of the federal Bureau of Alcohol, Tobacco, and Firearms that Donald Langbein told Agent Ozbolt that Langbein told Shannon Williams, while an inmate of the Franklin County Jail, that Langbein "was involved in a homicide with an individual who is now incarcerated in the Federal Penitentiary at Ashland, Kentucky, where the victim was shot seventeen times." *Id.* at ¶ 212, PageID 650-51. The First Amended Petition further avers that Jeremy Chavis, who

1

was Petitioner's co-defendant in this case, was at the time of the statement incarcerated at FCI Ashland. *Id.* at ¶ 213. Petitioner's inference is that Langbein admitted killing the victims in this case with Jeremy Chavis. *Id.*

The Ozbolt Report was the focus of Petitioner's prior Motion for Discovery in this case (ECF No. 60). The Magistrate Judge denied that Motion in part because the Ohio courts had decided the Ozbolt Report was not *Brady* material (Decision and Order, ECF No. 69, PageID 8303). That determination had been made as part of the decision of Judge Richard Frye of the Franklin County Court of Common Pleas on Bethel's Motion for New Trial which was heavily based on the Ozbolt Report. The Magistrate Judge's decision recited key portions of Judge Frye's decision and concluded:

> When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). Bethel has not demonstrated that Judge Frye's application of *Brady* is objectively unreasonable.

(ECF No. 679, PageID 8303, aff'd., ECF No. 85.)

Petitioner's Motion recognizes that there are substantial limitations on evidentiary hearings in federal habeas corpus, limitations arising from the AEDPA as codified at 28 U.S.C. § 2254(e)(2) and *Cullen v. Pinholster*, 563 U.S. 170 (2011). His basic premise for an evidentiary hearing here is his claim that "the state court's rulings on Bethel's 15th ground for relief are unreasonable under § 2254(d)(1) and/or § 2254(d)(2) [and] therefore this court must review them under the de novo standard of review." (Motion, ECF No. 88, PageID 8468.) He asserts this

2

removes *Pinholster* as a barrier. *Id.*, citing *Harris v. Haeberlin*, 752 F.3d 1054, 1058 (6th Cir. 2014). Bethel separates his argument between § 2254(d)(1) and (d)(2) and this Decision will analyze them separately.

I. **The Ohio Courts Reasonably Decided the State Did Not Violate *Brady***

**Asserted Unreasonable Application of Clearly Established Federal Law**

The standard for habeas review under 28 U.S.C. § 2254(d)(1) of a state court decision on a federal constitutional claim is not whether the state court was wrong, but whether it was so wrong that there is no possibility for "fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697 (2014), *quoting Harrington v. Richter*, 562 U.S. 86 (2011); *see also Woods v. Etherton*, 578 U.S. ___, 136 S. Ct. 1149 (2016).

> "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court decision," *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. ___, ___ (2014), slip op. at 4.

*Woods*, 136 S. Ct. at 1151.

Bethel begins his § 2254(d)(1) argument with the unexceptionable premise that *Brady* extends to impeachment evidence as well as exculpatory evidence (Motion, ECF No. 88, PageID 8475, citing *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006)). The Supreme Court

3

adopted that proposition well before *Youngblood*. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Brooks v. Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010). The Supreme Court has in fact rejected any distinction between impeachment evidence and exculpatory evidence in the *Brady* context. *Connick v. Thompson*, 563 U.S. 51, 99, n. 16 (2011), *quoting United States v. Bagley*, 473 U.S. 667, 676 (1985).

But Bethel does not argue Judge Frye ignored this law and indeed he did not. At page seven of his Decision,[1] he recites the governing *Brady* standard, including impeachment evidence as embodied in *Irick v. Bell*, 565 F.3d 315 (6th Cir. 315):

> In *Brady [v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215]*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. 1194. "'There are three components of a true Brady violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Owens [v. Guida* (6th Cir. 2008)], 549 F.3d [399] at. 415 (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). A defendant is prejudiced when there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

(ECF No. 11-2, PageID 205.)

Bethel's argument instead is that the Ohio courts "unreasonably downplayed the importance of the suppressed evidence, reasoning that Langbein had already been cross-

---

[1] Judge Frye's Decision does not recie all the relevant contextual facts for undersanding his Decision. Instead"[f]Familiarity with the Supreme Court's opinion in State v. Bethel, 110 Ohio St. 3d 416, 2006-0hio-4853, 854 N.E.2d 150, with Judge Miller's sentencing opinion rendered pursuant to R.C. 2929.03(F), and with the prior decisions by this court and the Tenth District Court of Appeals is assumed.

4

examined with an inference that he committed the murders." (Motion, ECF No. 88, PageID 8475.)

This Court disagrees. A critical question with any *Brady* claim is materiality – how impeaching is the suppressed evidence? The Ozbolt Report is not a statement by Langbein upon which he could have been cross-examined. It is a statement by Shannon Williams and therefore double hearsay as to anything Langbein said. Bethel argues that "[q]uestions of credibility are properly for the jury . . ." (ECF No. 88 at PageID 8475), but post-trial *Brady* claims face a materiality hurdle. As Judge Frye found, "Bethel's lawyers already had every incentive to portray Langbein as an untrustworthy felon who cooperated with police only to benefit himself by wearing a wire and coaxing Bethel to make incriminating statements." (Decision, ECF No. 11-2, PageID 206.) Judge Frye notes that the purported statement by Langbein to Williams occurred in the same short time period when Bethel made a proffer and made statements to his girlfriend Theresa Cobb Campbell "unequivocally admit[ing] killing Reynolds and Hawks with a 9 mm handgun." *Id.* at PageID 207.

The Franklin County Court of Appeals also found the Ozbolt Report lacked materiality. *State v. Bethel*, 2010 Ohio App. LEXIS 3242 (10th Dist. Aug. 17, 2010), appellate jurisdiction declined, 2012 Ohio 4021, citing *Kyles v. Whitely*, 414 U.S. 419 (1995), the governing Supreme Court precedent on materiality.

Once again, Bethel has failed to persuade this Court that the state court decisions are objectively unreasonable beyond the possibility of fairminded disagreement.

**Asserted Unreasonable Determination of the Facts**

5

Bethel also asserts the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court.

First of all, Bethel asserts the Franklin County Court of Appeals unreasonably determined that the Ozbolt Report was not suppressed because "the State did not even dispute it." (Motion, ECF No. 88, PageID 8478.) That is a mischaracterization of the Tenth District's decision. That court did say, as Bethel claims, "it is not clear that the ATF report was 'suppressed' by either the prosecution or the Columbus police." *State v. Bethel*, *supra*, at ¶ 19. But as the court's subsequent discussion indicates, "suppression" in the *Brady* context is a mixed question of law and fact. What Judge Frye had found was that the State conceded the Ozbolt Report was not produced in discovery at trial, but that does not equate to an admission that it was suppressed. As both state courts found, the Ozbolt Report as eventually obtained by Bethel's investigator came from the file of Bethel's co-defendant Jeremy Chavis and does not contain Bethel's name. The State never conceded that the Report was "suppressed" as Bethel argues (Motion, ECF No. 88, PageID 8478).

Second, Bethel argues the state courts were incorrect in concluding Bethel's counsel could have investigated Shannon Williams, Agent Ozbolt's source. Judge Frye found that Williams' name was "listed by the State in pretrial discovery in this case as a witness, but one without a known address." (Decision, ECF No. 11-2, PageID 202.) Bethel does not dispute the accuracy of this finding by Judge Frye. Rather, he claims the court of appeals went astray when it concluded, on the basis of the trial court record, that "it is entirely possible that appellant's previous counsel, of which there were several, did investigate Williams and found him to be of no value to the defense." *State v. Bethel*, *supra*, ¶ 20.

Bethel objects that the investigator for his first set of attorneys, Gary Phillips, testified at

6

trial that he did no investigation (Motion, ECF No. 88, PageID 8479, citing Tr. Vol. 14, ECF No. 56-15, PageID 7289). That is an accurate characterization of Phillips' testimony. According to Bethel, his second set of attorneys tried but was unable to obtain addressed for witnesses before they withdrew and his third set of attorneys also did not know of the content of the Ozbolt Report. It appears to this Court unlikely that Bethel's second or third set of attorneys spoke to Williams, because he flat out refused to speak to Bethel's habeas counsel or the State in 2008. Thus the Tenth District's "entirely possible" is speculative if it refers to finding Williams of no value to the defense after interviewing him. But this speculation by the Tenth District does not prove a violation of § 2254(d)(2) because the Tenth District did not base its decision on that possible fact; the court gave many other reasons for affirming Judge Frye.

Third, Bethel objects to the Tenth District's finding that "it is wholly speculative as to whether Langbein's statements are referring to the homicides at issue here." (Motion, ECF No. 88, PageID 8480, quoting *State v. Bethel*, *supra*, at ¶ 21.) Bethel argues "It is objectively unreasonable for an appellate court to doubt the connection to Bethel's case when it was the Columbus Division of Police that *made* the connection." (Motion, ECF No. 88, PageID 8480, emphasis sic). As Bethel's argument plainly implies, the Columbus Police made the connection in 2008 in response to a public records request. The request itself has not been furnished to this Court. As to its content, the record contains the Affidavit of Martin Yant who avers that he "filed a public records request on September 25, 2008, for any and all records in the possession of the Columbus Division of Police concerning Robert Bethels' case." (ECF No. 55-7, PageID 4610.) Assuming without knowing that this is what was requested, it is a fair inference that **in 2008** the person producing records from Columbus Police made the connection. But the argument is misleading – it does not show that anybody at Columbus Police made that

connection **in 2001** at the time of pre-trial discovery.  That is the relevant time for the *Brady* claim.

Besides production of the document in 2008, Bethel points to other facts in the state court record which he says demonstrate that the Ozbolt Report was connected to the Bethel case (ECF No. 88, PageID 8481).  However, he points to no place in the state court record where he called this evidence to the attention of the court of appeals.  Whether or not the connection is "wholly speculative," Bethel does not dispute the underlying findings of act by Judge Frye that undermine the connection:  Bethel's name is not on the Report, it was stored in the Chavis file, and inconsistencies between the murders as described at trial and the murders as Langbein allegedly described them to Williams.

Lastly, Bethel criticizes the court of appeals' statement

> **[*P23]** Lastly, we note the ATF report indicates that Langbein stated he was "involved" in a homicide. Assuming Langbein was referring to the Reynolds-Hawks murders, Langbein's statement still does not amount to a "confession" of murder as appellant claims. Langbein was involved in this matter as he had been working as an informant with authorities as early as July 2000. Langbein even wore a wire on several occasions in an attempt to obtain incriminating statements from appellant, and all of these meetings occurred prior to Williams contacting Agent Ozbolt on November 9, 2000.

*State v. Bethel*, *supra*, partially quoted at ECF No. 88, PageID 8482.  Bethel reasons that "[if] Langbein was merely telling Williams that he was an informant in the case against Bethel and Chavis, then Williams would have had no reason to call Agent Ozbolt and report this to him."  (ECF No. 88, PageID 8482-83.)  Bethel also asserts the idea that Langbein would tell Williams

8

that Langbein was a snitch is "incredulous."[2] But the Court has heard of far more incredible conversations between informants and other jail inmates and Williams' report may merely have been an attempt to curry favor with Ozbolt.

In sum, Bethel has not proved that the Tenth District's affirmance of Judge Frye's decision is based on an unreasonable determination of the facts in light of the evidence. The Tenth District cited many facts from Judge Frye's decision as a basis for the affirmance. Bethel's quibbles are at best arguments about characterization of the evidence rather than demonstrations that the Ohio courts ignored it.

## II. Bethel's *Brady* Claim is Procedurally Defaulted

Bethel's first presentation of his *Brady* claim to the Ohio courts was made in his Motion for New Trial Based on Newly Discovered Evidence, filed April 13, 2009 (ECF No. 11-1[3]). Judge Frye denied Bethel leave to file his new trial motion. As he noted in his Decision, Ohio Crim. R. 33(C) provides a "strict time limitation" on motions for new trial unless a defendant can prove by clear and convincing evidence "that he was unavoidably prevented from the discovery of the evidence" (Decision, ECF No. 11-2, PageID 203).

Judge Frye found that Bethel had not met this burden.

> The point is, how this short report even found its way into the Bethel file produced in 2008 under a public records request has never been shown or suggested circumstantially. Without that, neither direct nor circumstantial evidence proves that Bethel was unavoidably prevented from discovering the ATF Report until November, 2008.

---

2 Surely "incredible" is intended.
3 Although this document is captioned "Motion for New Trial," Judge Frye's decision shows that it was accompanied by a Motion for Leave to File a Delayed Motion for New Trial. Ohio practice allows for new trial motions based on newly discovered evidence, but a defendant must first obtain permission to file if more than 120 days have elapsed since judgment. Ohio R. Crim. P. 33.

*Id.* at PageID 203-04. Whether or not they talked to him before trial, Bethel's attorneys were aware of Shannon Williams as a potential witness at the time for trial. Although he refused to be interviewed in April 2009, the record "does not show that he declined to be interviewed on any occasion" prior to that. *Id.* at PageID 204. The record reflects that the investigator who made the public records request that yielded the Ozbolt Report did so promptly after he was retained by Bethel's mother in mid-September 2008 and that he got the response from the Columbus Police Division within less than five weeks. But Bethel was convicted in August 2003 and Judge Frye was given no persuasive explanation of why it took so long to hire the investigator. In fact, Judge Frye also noted that it had taken from November 2008 until April 2009 to file the motion for leave to file a delayed motion for new trial and Bethel had not satisfactorily explained that delay. Based on that lack of clear and convincing evidence, Judge Frye held Bethel had procedurally defaulted his *Brady* claim, although he also provided an alternative merits analysis discussed above (Decision, ECF No. 11-2, PageID 205).

The Sixth Circuit Court of Appeals requires a four-part analysis of a possible procedural default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio plainly has a relevant procedural rule placing strict time limits on motions for new trial which Judge Frye enforced against Bethel. In the interest of finality of litigation, Ohio's time limits are adequate and independent of federal law. Bethel has not demonstrated any excusing cause and prejudice for failing to meet that time limit. Therefore his Fifteenth Ground for Relief does not warrant an evidentiary hearing and should eventually be dismissed as procedurally defaulted.

Conclusion

Based on the foregoing analysis, Bethel's Motion for Evidentiary Hearing is DENIED.

May 1, 2017.

> s/ *Michael R. Merz*
> United States Magistrate Judge