# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

    Petitioner,

    -vs-

DAVID BOBBY, Warden,

    Respondent.

:

:

:

Case No. 2:10-cv-391

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

## SUPPLEMENTAL OPINION ON PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING

This capital habeas corpus case is before the Court on Petitioner's Objections (ECF No. 100) to the Magistrate Judge's Decision and Order denying an evidentiary hearing on Mr. Bethel's Fifteenth Ground for Relief (the "Decision," ECF No. 96)(reported at *Bethel v. Bobby*, 2017 U.S. Dist. LEXIS 65856 (S.D. Ohio May 1, 2017)). District Judge Barrett has recommitted the matter for a supplemental opinion on the question whether to grant an evidentiary hearing (ECF No. 103).

In the Decision, the Magistrate Judge concluded that the Ohio courts' rejection of Bethel's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), was neither an objectively unreasonable application of Supreme Court precedent nor a decision based on an unreasonable determination of the facts. The decision was therefore found to be entitled to AEDPA deference under both 28 U.S.C. § 2254(d)(1) and (d)(2). The Magistrate Judge also concluded the *Brady* claim was procedurally defaulted.

1

**Standard of Review**

A motion for an evidentiary hearing in a habeas corpus case is a non-dispositive pre-trial matter on which an assigned Magistrate Judge has authority to enter a decision and that is what was done here. 28 U.S.C. § 636(b)(1)(B).[1]

The standard of review of nondispositive matters is clearly erroneous as to factual findings and contrary to law as to legal conclusions. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001), *citing United States v. Raddatz*, 447 U.S. 667, 673 (1980).

**Procedural History**

James Reynolds and Shannon Hawks were shot to death with a 9 mm firearm sometime before June 26, 1996, when their bodies were discovered in a field near Columbus, Ohio. In November 2000, Bethel was indicted for the murders. In August 2001 in return for agreement to drop the capital specifications, Bethel agreed to cooperate and provide truthful testimony. Pursuant to that agreement, Bethel made a proffer in which he admitted the shooting. Then on November 13, 2001, he refused to testify against Jeremy Chavis and the court vacated the plea agreement on the State's motion. At trial in June 2003 the jury heard Bethel's admissions made during the proffer, found him guilty on all counts and specifications, and recommended a death sentence which the court imposed on August 2, 2003.

The conviction was affirmed on direct appeal. *State v. Bethel*, 110 Ohio St. 3d 416

---

[1] Petitioner's request that the District Judge "should overrule the Magistrate Judge's Report and Recommendations" (ECF No. 100, PageID 8593) mischaracterizes the status of the case.

Case: 2:10-cv-00391-MRB-MRM Doc #: 106 Filed: 07/27/17 Page: 3 of 12  PAGEID #: 8649

(2006).  While the direct appeal was pending, Bethel filed for post-conviction relief under Ohio Revised Code § 2953.21 which the Franklin County Common Pleas Court denied August 31, 2007.  The Tenth District affirmed and the Ohio Supreme Court declined jurisdiction.  That court also denied a motion to reopen for ineffective assistance of appellate counsel.

On April 13, 2009, Bethel moved for leave to file a delayed motion for new trial which Judge Frye denied September 3, 2009.  That decision was affirmed on appeal and the Ohio Supreme Court again declined jurisdiction.  Bethel sought leave to proceed *in forma pauperis* on his habeas petition in this Court April 30, 2010.

On August 30, 2013, Bethel sought leave to conduct discovery on his Fifteenth and Eighteenth Grounds for Relief (ECF No. 60).  The Magistrate Judge denied that Motion on December 23, 2013 (ECF No. 69).  District Judge Barrett overruled Petitioner's Objection on September 16, 2016 (ECF No. 85).  Petitioner then filed the instant Motion for Evidentiary Hearing December 30, 2016 (ECF No. 88).

## Analysis

In his Motion for Discovery, Bethel sought mostly records and deposition testimony related to his Fifteenth Ground for Relief, e.g., depositions of Donald Langbein, Shannon Williams, and ATF Agent Ozbolt.  Ground 15 reads:

> **Fifteenth Ground for Relief:** Bethel was denied due process and a fair trial under the Sixth and Fourteenth Amendments when the State failed for provide him with favorable evidence that was material to his defense.

3

(Amended Petition, Doc. No. 48, PageID 650.)  In denying the Motion for Discovery, the Magistrate Judge relied heavily on Judge Frye's opinion denying the motion for new trial.  He found that Bethel had not been diligent in discovering the Ozbolt report or in presenting his motion.  On the merits of the *Brady* claim, he found "there was no evidence the Ozbolt Report was either intentionally or negligently suppressed by the Columbus Police." (ECF No. 11-2, PageID 206.)  He also concluded the Report was not material:

> The ATF Report could not have been direct, substantive evidence. At most, it would have provided some slight additional basis for vigorous cross-examination of Langbein. It did not plainly contradict what he said because of the factual variances between the murder he described and this case. It was not good impeachment material because of the layers of hearsay in it. But, the more important point is that Bethel's trial lawyers already had every incentive to portray Langbein as an untrustworthy felon who cooperated with police only to benefit himself by wearing a wire and coaxing Bethel to make incriminating statements. No new avenue was suggested by the ATF Report on how to convincingly attack Langbein.
>
> Langbein's alleged jailhouse statement to Williams occurred more or less contemporaneously with the taped statements by Bethel. Events in that time period already were a key focus of Bethel's trial. Nothing in the ATF Report negates Bethel's own statements made in his proffer or made to Campbell, in which he unequivocally admitted killing Reynolds and Hawks with a 9 mm handgun. As mentioned above, closely viewed Langbein's alleged statement described a substantially different murder, albeit possibly also involving Bethel's co-defendant Chavis as the driver. Bethel's trial involved two victims - one shot ten times, the other shot four times. The crime Langbein allegedly described to Williams involved one victim shot seventeen times. Bethel was the driver of the victims in this case, not Chavis. 110 Ohio St.3d at 418, ¶¶ 8, 43.
>
> Considering the entire record, including Bethel's own statements admitting to killing Reynolds and Hawks and the material variance

4

> between the alleged crime memorialized in the ATF Report and the crimes as they occurred here, a new trial for Bethel would not be appropriate. The court's confidence in the outcome of defendant Bethel's trial has not been undermined.

*Id.* at PageID 206-07.

The Magistrate Judge found that the premise of the Motion for Discovery was that the Ozbolt Report was *Brady* material and that premise was undermined by the Ohio courts' decision that it was not, a conclusion entitled to AEDPA deference (ECF No. 69, PageID 8303). The Magistrate Judge also accepted Judge Frye's conclusion that the Ozbolt Report, as a federal law enforcement report, only came into the possession of the Columbus police when someone sent it to them between November 2000 and November 2008. *Id.* The District Court overruled two sets of Objections to the Magistrate Judge's decision on discovery (ECF No. 85).

Petitioner's Motion for Evidentiary Hearing seeks to litigate his Fifteenth Ground for Relief by eliciting testimony from attorneys Ronald Janes, Joseph Edwards, Dane Chavers, Frederick Benton, and Kirk McVay who all represented Bethel at one time or another during the trial phase of the case, ATF Special Agent Ozbolt, former Franklin County assistant prosecutors David Devillers and Gregory Peterson who tried the case on behalf of the State, Shannon Williams (the course of the information in the Ozbolt Report) and Donald Langbein (Motion, ECF No. 88, PageID 8473-74). The balance of the Memorandum in Support basically argues the merits of Bethel's *Brady* claim.

In denying the Motion for Evidentiary Hearing, the Magistrate Judge essentially followed his prior conclusion in the Motion for Discovery: because the state court decisions on the motion for new trial decided the relevant federal question – is the Ozbolt Report *Brady* material? – in a manner that was neither contrary to nor an objectively unreasonable applications of Supreme Court precedent and did not constitute an unreasonable determination of the facts, an evidentiary

5

hearing was precluded by 28 U.S.C. § 2254(e)(2) and *Cullen v. Pinholster*, 563 U.S. 170 (2011).

The Objections begin, as is often the case in brief writing, with a very short narrative of the "facts," construed as Petitioner wants them construed (ECF No. 100, PageID 8593). By Petitioner's summary account, a "key prosecution witness Donald Langbein" made a statement to an informant, Shannon Williams, which inculpated Langbein and exculpated Bethel. Williams passed that information on to ATF agent Daniel Ozbolt who put it in a report that he gave to the Columbus Police who then put it in their file on Bethel's case but never gave it to Bethel. Since the Ozbolt report is impeaching of Langbein and exculpatory of Bethel, it is obviously *Brady* material and Bethel is entitled to relief. That is the essence of Petitioner's argument, but it ignores a host of underlying historical facts found by the Ohio courts and not shown to be incorrect in Bethel's motion or objections.

Bethel begins by complaining that the Decision considered the initial Ohio evaluation of the Ozbolt report, Franklin County Common Pleas Judge Richard Frye's denial of Bethel's motion for new trial, rather than the ultimate decision of the Tenth District (ECF No. 100, PageID 8594). The Decision considers both. Petitioner is correct that the ultimate state court decision to be evaluated under 28 U.S.C. §§ 2254(d)(1) and (d)(2) is the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). But where, as here, the appellate court decision is heavily dependent on trial court findings, the reasonableness of the appellate decision depends on how reasonable its assessment is of what the trial court did. Ohio courts of appeals very rarely hear evidence independent of what appears in the record on appeal and the Tenth District here relied entirely on the record made before Judge Frye.

Bethel continues by complaining that the Magistrate Judge "did not address Bethel's challenges to the way the state court applied [Supreme Court] law." (ECF No. 100, PageID

6

8595.) As a principal example, Bethel complains that "the state court refused to acknowledge the materiality of the impeaching evidence . . . and essentially relied upon a sufficiency-of-the-evidence test in its materiality determination." *Id.* Judge Frye did nothing of the kind. He noted that Bethel's trial lawyers had every incentive to portray Langbein as an "untrustworthy felon" who wore a wire and coaxed Bethel to make incriminating statements (Decision, ECF No. 96, citing Judge Frye's decision, ECF No. 11-2, PageID 206). Moreover in making the materiality determination, Judge Frye expressly weighed whatever value the Ozbolt Report might have had against Bethel's own admission of guilt in the proffer he made[2] and to his girlfriend (Decision, ECF No. 96, PageID 8539, citing Judge Frye's decision at PageID 207). That is simply not the equivalent of applying a "sufficiency-of-the-evidence" test.

Petitioner lists ten cases[3] which he says were unreasonably applied by "the state court," then complains the Magistrate Judge did not "address[ ] any of the ways in which the state court unreasonably applied clearly established federal law. . ." (ECF No. 100, PageID 8596). But then he asserts he is not questioning the materiality decision of the Tenth District because that court "**never made** that finding." (ECF No. 100, PageID 8596, emphasis sic.) To the contrary, the Tenth District cites standards from the relevant Supreme Court case law and then writes seven paragraphs addressing the evidence before Judge Frye in light of those standards. *State v. Bethel*, 2010-Ohio-3837, ¶¶ 18-24, 2010 Ohio App. LEXIS 3242 (10th Dist. Aug. 17, 2010). Bethel has failed to show that decision was "objectively unreasonable beyond the possibility of fairminded disagreement." (Decision, ECF No. 96, PageID 8539, citing standard from *White v. Woodall*, *supra*.)

Bethel faults the Magistrate Judge for an incorrect finding that the Ozbolt Report would

---

[2] Mr. Bethel made a proffer as part of an expected plea bargain. He later recanted, but the jury heard the admission.
[3] Two of these are circuit opinions and thus do not "count" as the relevant clearly established federal law which consists only of holdings of the Supreme Court. *White v. Woodall*, 572 U. S. ___, ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (2014).

have been inadmissible hearsay.  That is not what the Decision says.  Since the Ozbolt Report records a statement by Williams to Ozbolt of what Langbein said to Williams, the Decision concluded it was "double hearsay as to anything Langbein said." (ECF No. 96, PageID 8539.) This is in the context of the materiality discussion.  There is no ruling that the Ozbolt Report was "inadmissible" and Bethel's arguments that it is are a red herring.  The Decision is not concerned about whether the Ozbolt Report could be admitted, but about the lack of reliability of hearsay, an appropriate consideration in deciding whether the Ozbolt Report is material.

Bethel objects to the Magistrate Judge's conclusion that the Ozbolt Report was not "suppressed." (Objections ECF No. 100, PageID 8604.)  He asserts "[i]t was clearly erroneous for the Magistrate Judge to find that the State did not suppress the evidence, in light of the record." *Id.*  To prove "suppression," Bethel relies on an admission in the State's Response to the Motion for New Trial in which the State admitted it did not turn over the Ozbolt Report in discovery at the time of trial. *Id.*  But in addition to that admission, there is also the fact that the Ozbolt Report was a report in the files of a federal investigative agency and the prosecutors had no duty or even ability to search federal law enforcement files for *Brady* material.  As both state courts also found, the Ozbolt Report was eventually obtained in 2008 from the co-defendant's file and it does not have Bethel's name in it.  Bethel's Objections give no deference at all to either Judge Frye's role as a fact finder or to that of the Magistrate Judge.  Per Bethel's argument, any conclusion that does not agree with his version of the facts is "clearly erroneous."

Bethel objects that "[w]hat constitutes 'suppression' is easily ascertained by [sic] Supreme Court case law.  It is contrary to law to conclude that 'failure to disclose evidence' is not the equivalent to [sic] 'suppression'. . . *Id.* at PageID 8606.  The case law cited by Bethel is *Banks v. Dretke*, 540 U.S. 668 (2004), and *Strickler v. Greene*, 527 U.S. 263 (1999).  In *Banks* it

8

was conceded that the State knew one of its witnesses was an informant but failed to disclose that information, as well as permitting him to testify falsely. *Banks* does not define "suppression" to include failure to disclose information in the hands of a different sovereign. In *Strickler* the unproduced evidence in question was in the hands of the police working on the case, even if not known to the prosecutor. 527 U.S. at 280-81. But Ozbolt was not working on the Bethel case with the Franklin County Prosecutor and there is no proof cited by Bethel of when he provided his report to the Columbus Police.

Bethel also objects to the Magistrate Judge's conclusion on the issue of procedural default (Objections, ECF No. 100, PageID 8611, et seq.)

As Judge Frye noted in his decision on the motion for new trial, Ohio law places a very strict time limit on motions for a new trial; motions filed after the time limit face an additional barrier of showing good cause for the delay and due diligence in pursuing the claim. Judge Frye found both that Bethel had not shown why he waited so long to have the public records request made on his behalf and also why he waited from November 2008 to April 2009 to file the motion after he obtained the Ozbolt Report (Frye Decision, ECF No. 11-2, PageID 203-206). He expressly concluded that Bethel had procedurally defaulted his *Brady* claim. *Id.* at PageID 205.

Applying controlling Sixth Circuit procedural default analysis, the Magistrate Judge found Judge Frye's conclusion was correct (ECF No. 96, PageID 8545). Bethel objects that the Tenth District did not enforce this procedural default (Objections, ECF No. 100, PageID 8611-12).

In the appeal from Judge Frye's denial of a new trial, the Tenth District had before it two assignments of error, one claiming Judge Frye should have allowed the motion for new trial to be

9

filed and a second claiming he should have granted the motion for new trial.[4]  Because it found no merit to the second assignment of error, it found the first to be moot. *Id.* at ¶ 16.

Bethel argues there is no procedural default because the Tenth District did not enforce Judge Frye's finding that Bethel did not exercise due diligence in obtaining the Ozbolt Report (Objections, ECF No. 100, PageID 8611, relying on *Harris v. Reed*, 489 U.S. 255 (1989)).  He accuses the Magistrate Judge of "second-guessing the findings of the Ohio Court of Appeals by disregarding them in favor of the trial court's findings." *Id.* at PageID 8612.  The Decision on this point does not "disregard" any "finding" of the Tenth District.  The Tenth District did not make a finding on Bethel's due diligence, but found the relevant assignment of error moot. *State v. Bethel*, *supra*, at ¶ 16.  But the Decision does not purport to rely on any finding of the Tenth District on this point.  Instead, it notes that "Ohio plainly has a relevant procedural rule placing strict time limits on motions for new trial which Judge Frye enforced against Bethel."  Bethel is correct that that ruling was not affirmed by the Tenth District.  Rather the assignment of error related to that ruling was found moot.

Thus Judge Frye's decision is the last reasoned decision on the procedural default issue. Where there has been one reasoned state court judgment rejecting a federal claim, there is a rebuttable presumption that later unexplained orders upholding the judgment or rejecting the same claim rest on the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).  The Tenth District's decision upholds Judge Frye's judgment on this ground without deciding whether it was error to refuse to allow the filing of the delayed motion for new trial. *Harris v. Reed* does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000);

---

[4] As the Tenth Disttrict explained , Ohio practice requires leave to file a motion for new trial based on newly-disocvered evidence  if the motion is tendered more than 120 days after verdict.. *State v. Bethel*, 2010 Ohio App. LEXIS 3242 ¶ 13 (10th  Dist. Aug. 17, 2010).

*McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  Although a state court discusses the merits of a claim in the alternative, there can still be procedural default if the state court rules on the procedural ground. *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998), *cert. denied*, 120 S. Ct. 110 (1999).

Bethel also objects to the actual finding of procedural default through lack of due diligence (Objections, ECF No. 100, PageID 8613-15).  He says he was "clearly prevented from discovery of the evidence within 120 days of the verdict, since he did not received the public records until November 4, 2008." (Objections, ECF No. 100, PageID 8613.)  This statement completely begs the question of when he first sought the records.  Judge Frye asks the question, which the Magistrate Judge repeats, why did it take so long to hire Martin Yant and to make the public records request?  That question is unanswered.

Bethel notes that *State ex rel Steckman v. Jackson*, 70 Ohio St. 3d 420 (1994), prevented use of public records requests to obtain documents like this until it was "recently amended" in *State ex rel. Caster v. Columbus*, 2016-Ohio-8394 (2016).  If *Steckman* was still the law until 2016, how did the public records request succeed in 2008?  If it succeeded in 2008, why not five years earlier, right after trial?  Bethel even asserts "[b]efore *Caster*, the Columbus Police Department's file was not subject to release," but it was in fact released more than eight years before *Caster* was decided.

Finally, Bethel argues that his delay in filing for 160 days after he received the Ozbolt Report was not unreasonable.  Since the usual rule is that motions for new trial must be filed within 120 days of verdict, how can it be said that a finding that 160 days is unreasonable is somehow clearly erroneous or an abuse of discretion?

11

**Conclusion**

Bethel's Objections to the Decision denying an evidentiary hearing are without merit and should be overruled.

July 27, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).