**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Robert Bethel,

       Petitioner,

       v.

David Bobby, Warden

       Respondent.

Case No.: 2:10-cv-391

Judge Michael R. Barrett

**OPINION & ORDER**

This matter is before the Court on the Magistrate Judge's May 1, 2017 Decision and Order denying Petitioner's Motion for an Evidentiary Hearing. (Doc. 96). Petitioner filed objections to the Decision and Order (Doc. 100); and the Warden filed a response to Petitioner's objections (Doc. 101). This Court then recommitted the matter for a supplemental opinion, which the Magistrate Judge entered on July 27, 2017. (Doc. 106). Petitioner filed objections to the Magistrate Judge's Supplemental Opinion. (Doc. 111).

For the reasons stated below, the Court OVERRULES in PART and SUSTAINS in PART Petitioner's Objections to the Magistrate Judge's May 1, 2017 Decision and Order and July 27, 2017 Supplemental Opinion.

I. **BACKGROUND**

This is a capital habeas petition brought pursuant to 28 U.S.C. § 2254. In 2003, Petitioner was found guilty of murdering James Reynold and Shannon Hawks. The Magistrate Judge has set forth the factual background and the procedural history of

Petitioner's claims. (See Doc. 106, PAGEID #8647-8652). The Court will not repeat the same here, except to the extent necessary to address Petitioner's objections.

Petitioner filed a Motion for an Evidentiary Hearing on his Fifteenth Ground for relief. In his Fifteenth Ground, Petitioner claims that he "was denied due process and a fair trial under the Sixth and Fourteenth Amendments when the State failed for provide him with favorable evidence that was material to his defense." This claim is centered on a report obtained by a private investigator following a public records request on the Columbus Police "for any and all records in the possession of the Columbus Division of Police concerning Robert Bethel's case." (Doc. 55-7, PAGEID #4610). This report was authored by Daniel Ozbolt, a Alcohol, Tobacco, and Firearms ("ATF") Special Agent. In Petitioner's state court proceedings, the Franklin County Court of Appeals explained:

> In the report entitled "CHAVIS, Jeremy," Agent Ozbolt indicates he was contacted by Shannon Williams ("Williams"), an inmate at the Franklin County Jail. According to the report, Williams stated fellow inmate Langbein told Williams that "he was involved in a homicide with an individual who is now incarcerated at the Federal Penn., Ashland, KY, where the victim was shot seventeen times" and that "the other individual who was arrested was the driver following the homicide." Williams stated he knew of no other details, but would "keep his ears open for further information." Because Chavis was incarcerated in the federal prison in Kentucky at this time, appellant contends this statement amounts to a "confession" that Langbein, not appellant, was the person who committed the murders with Chavis.

(Doc. 11- 4, PAGEID #238).

Petitioner claims that the Ozbolt report should have been disclosed to his trial attorneys under *Brady v. Maryland*, 373 U.S. 83 (1963). The Ozbolt report was the basis of a previous Motion for Discovery, which the Magistrate Judge denied. (Docs. 69, 85). The denial of that Motion and the current Motion for an Evidentiary Hearing rest on the Ohio courts' rejection of Petitioner's *Brady* claim. In denying the Motion for

2

an Evidentiary Hearing, the Magistrate Judge explained that the Ohio courts' decision that the Ozbolt report was not *Brady* material was entitled to AEDPA deference. Accordingly, the Magistrate Judge in both that decision and the decision on the Motion for Evidentiary Hearing analyzed whether the state court judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Magistrate Judge concluded that the Ohio courts' decision was neither an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts. The Magistrate Judge also found that based on the Ohio courts' denial of Petitioner's Motion for New Trial Based on Newly Discovered Evidence, Petitioner's *Brady* claim was procedurally defaulted and his Fifteenth Ground should eventually be dismissed.

## II. ANALYSIS

### A. Applicable standards

This Court shall consider objections to a magistrate judge's order on a nondispositive matter and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir.2008)

(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

The Supreme Court has explained that in deciding whether to grant an evidentiary hearing:

> a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. *Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000)). Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate. *See id.*, at 1287–1288 ("Whether [an applicant's] allegations, if proven, would entitle him to habeas relief is a question governed by [AEDPA]").
>
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007) (footnote omitted).

## B. *Brady* claim

Under its analysis of whether the Ohio courts' decision was an unreasonable application of clearly established federal law, the Magistrate Judge noted that a critical question with any *Brady* claim is materiality.[1]

Petitioner argues that the state court ignored the materiality of the evidence and instead relied upon a "sufficiency-of-the-evidence test" in its materiality determination. However, as the Sixth Circuit has explained: "The materiality of *Brady* evidence

---

[1] A claim under *Brady* requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). Prejudice can be demonstrated by showing that the suppressed evidence is "material." *Eakes v. Sexton*, 592 F. App'x 422, 427 (6th Cir. 2014).

4

depends almost entirely on the value of the undisclosed evidence relative to the other evidence produced by the state." *Eakes v. Sexton*, 592 F. App'x 422, 427-28 (6th Cir. 2014) (citing *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)). Therefore, the materiality analysis necessarily involves weighing the value of the undisclosed evidence against other evidence produced by the state.

Petitioner explains that Langbein was a key witness for the prosecution at his trial and the Ozbolt report is both exculpatory and impeaching.

The Franklin County Court of Appeals explained that "most importantly," the evidence against Petitioner consisted more than just the Ozbolt Report: "The evidence also consisted of appellant's statements to Campbell and his own admission as contained in his proffer." (Doc. 11-4, PAGED ID #243). These "statements to Campbell" are a reference to the trial testimony of Theresa Cobb Campbell, who was Petitioner's girlfriend at the time of the murders. (Doc. 11-4, PAGEID #237). The Franklin County Court of Appeals explained that Campbell's testimony was that after the murders, she and Petitioner had a conversation at her mother's house in which Petitioner told her he killed Reynolds and Hawks:

> He said that [he], Jeremy, and these two people went to go practice shooting guns. And he said when they got there, he said that he had a feeling to shoot, and he said, "So I did."
>
> And he said that he called Jeremy to come and look to see what he had done, and he said that Jeremy went, and he started crying.
>
> And then he said that he reloaded and - the clip and fired.

(Doc. 11-4, PAGEID #237).

The "own admission" referenced by the Franklin County Court of Appeals is a proffer made by Petitioner in which he admitted to the shooting. In 2001, Petitioner

5

entered into a plea agreement in which he agreed to cooperate and provide truthful testimony, and in return the state would drop the capital specifications. However, Petitioner later refused to testify against Jeremy Chavis, and the plea agreement was vacated. The proffer was introduced at trial and was summarized by the Franklin County Court of Appeals as follows:

> According to the proffer, killing Reynolds had been Chavis's idea, and before the murders, appellant and Chavis discussed what they were going to do. Appellant stated he and Chavis drove Reynolds and Hawks to a field belonging to Chavis's grandfather to do some shooting. After walking to a clearing, appellant, using a 9mm handgun, and Chavis, using a shotgun, fired at Reynolds and Hawks who were standing together; Reynolds with his arm around Hawks. Specifically, appellant stated that after the couple fell to the ground, he wanted to leave, but Chavis handed appellant another loaded clip and indicated he wanted to make sure the couple was dead. Appellant explained that he then emptied the other clip into the bodies at close range. After the shooting, appellant drove to an alley where he threw his shirt into a dumpster, and then the pair drove to a body of water where Chavis separated the barrel from the shotgun and disposed of it in the body of water. Appellant described that he and Chavis proceeded to Chavis's house where they changed clothes and threw their clothes in a dumpster.

(Doc. 11-4, PAGEID #236).

Turning to the Oxbolt report as impeachment evidence, impeachment evidence is material if the evidence "would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration." *Eakes v. Sexton*, 592 F. App'x 422, 427-28 (6th Cir. 2014) (citing *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)). The Franklin County Court of Appeals explained the Oxbolt report was not material impeachment evidence:

> Langbein was extensively cross-examined at trial, wherein defense counsel tried to portray Langbein as one implicating appellant only to get a better deal on his federal firearms charge. Langbein was also questioned about having a grudge against appellant and being one of the persons involved in the planning of Reynolds' murder. Additionally, Langbein was

> questioned about a confrontation between Reynolds and another individual, Joey Green, in which Green threatened Reynolds causing Reynolds to expose a gun to Green. Thus, Langbein's cross-examination inferred that others, or even he, was the person who committed the homicides.
>
> Lastly, we note the ATF report indicates that Langbein stated he was "involved" in a homicide. Assuming Langbein was referring to the Reynolds-Hawks murders, Langbein's statement still does not amount to a "confession" of murder as appellant claims. Langbein was involved in this matter as he had been working as an informant with auhorities as early as July 2000. Langbein even wore a wire on several occasions in an attempt to obtain incriminating statements from appellant, and all of these meetings occurred prior to Williams contacting Agent Ozbolt on November 9, 2000.

(Doc. 11-4, PAGEID #243-44).

Based on this other evidence in the record, the Magistrate Judge found that the Ohio courts' finding that the Oxbolt report was not material was not an unreasonable application of clearly established federal law. On this point, the Court finds that the Magistrate Judge's order was not clearly erroneous or contrary to law.

The Magistrate Judge also concluded that the Ohio courts' decision on Petitioner's *Brady* claim was not an unreasonable determination of the facts. The Magistrate Judge concluded that the Ohio courts properly determined that the Oxbolt report was not "suppressed." This issue was addressed as an initial matter by the Franklin County Court of Appeals, which explained:

> Initially, we note it is not clear that the ATF report was "suppressed" by either the prosecution or the Columbus police. As noted by the trial court, there is no indication as to when this report, titled "CHAVIS, Jeremy" and making no reference whatsoever to appellant, came into the possession of the police department or when it was placed in connection with the file on appellant. However, assuming arguendo that the prosecution "suppressed" the report within the meaning of *Brady*, we find no reasonable probability of a different trial outcome had the defense received this report. Thus, we find no *Brady* violation and further find that appellant failed to meet the standard for a new trial.

(Doc. 11-4, PAGEID # 242).

As the Magistrate Judge explained, before the Ozbolt report was placed in connection with the file on Petitioner, the Ozbolt report was in the files of a federal investigative agency and the prosecutors had no duty or even ability to search those files for *Brady* material. The problem – recognized by the Franklin County Court of Appeal – is that the record is silent as to how and when the Ozbolt report made its way from the federal agency to the prosecution or the Columbus police. Even if the Court were to find that this conclusion is erroneous, the Court has already found that the Ohio courts alternative finding – that the Ozbolt report is not material – was not erroneous. Therefore, the Court finds that the Magistrate Judge's order was not clearly erroneous or contrary to law on this point.

Petitioner makes an additional argument regarding hearsay. The hearsay issue stems from a statement by the Magistrate Judge that since the Ozbolt report records a statement by Williams to Ozbolt of what Lanbein to Williams, the report was double hearsay as to anything Langbein said.[2] (Doc. 96, PAGEID #8539). However, as the Magistrate Judge explained, the hearsay observation is not an evidentiary ruling, but instead is a consideration in deciding whether the Ozbolt report is material.

---

[2] The trial court made the same observation in deciding Petitioner's *Brady* claim:

> The ATF Report could not have been direct, substantive evidence. At most, it would have provided some slight additional basis for vigorous cross-examination of Langbein. It did not plainly contradict what he said because of the factual variances between the murder he described and this case. It was not good impeachment material because of the layers of hearsay in it. But, the more important point is that Bethel's trial lawyers already had every incentive to portray Langbein as an untrustworthy felon who cooperated with police only to benefit himself by wearing a wire and coaxing Bethel to make incriminating statements. No new avenue was suggested by the ATF Report on how to convincingly attack Langbein.

(Doc. 11-2, PAGEID #206)

8

Petitioner points to Sixth Circuit decisions where similar "double-hearsay" statements were found to be sufficiently reliable *Brady* evidence as prior inconsistent statements under Ohio Rule of Evidence 613, or as statements against interest under Rule 804(B)(3). *See, e.g.*, *Bies v. Sheldon*, 775 F.3d 386, 401 n.9 (6th Cir. 2014); *Gumm v. Mitchell*, 775 F.3d 345, 369 (6th Cir. 2014). However, what is missing in this case is the "corroborating circumstances" which would indicate the trustworthiness of the statement. As the Franklin County Court of Appeals explained, there was other evidence in the record which undermined the reliability of the Ozbolt report:

> it is wholly speculative as to whether Langbein's statements are referring to the homicides at issue here. Williams said Langbein stated he was involved in a homicide where the victim was shot 17 times. Here, there were two-victims; one shot ten times, and the other shot four times. Also, Williams said Langbein stated the other person who was arrested was the driver after the homicide; however, according to appellant, Chavis was not a driver but an actual participant in the shootings. Appellant's version of events, that he used a 9mm while Chavis used a shotgun, correlates with the evidence presented at trial that the victims suffered wounds consistent with those caused by a 9mm and a shotgun. Additionally, multiple 9mm shell casings and 12-guage shotgun casings were recovered from the scene.

(Doc. 11-4, PAGEID #243). Therefore, the Court finds that the Magistrate Judge's order was not clearly erroneous or contrary to law on this point.

## C. Procedural default

Petitioner first presented his *Brady* claim to the Ohio courts in his Motion for New Trial Based on Newly Discovered Evidence. Petitioner simultaneously filed a Motion for Leave to File a Delayed Motion for New Trial because under Ohio Rule of Criminal Procedure 33, a defendant must first obtain permission to file a motion for a new trial if more than 120 days have elapsed since judgment. The state trial court concluded that Petitioner had procedurally defaulted his claim. (Doc. 11-2, PAGEID #205). However,

9

the trial court also addressed the merits of Petitioner's *Brady* claim. (Doc. 11-2, PAGEID #205) ("Even if this court ignored the procedural default and, at this late date, considered the substantive argument for a new trial, Mr. Bethel has not convinced this court a hearing is necessary before the request for a new trial is denied.").

On appeal, the Franklin County Court of Appeals was presented with two assignments of error: (1) the trial court should have allowed the motion for new trial to be filed; and (2) the trial court should have granted the motion for new trial. The Franklin County Court of Appeals found no merit to the second assignment of error, and therefore found the first assignment of error to be moot:

> In his first assignment of error, appellant contends the trial court erred in denying his motion for leave to file a motion for a new trial. However, as we have already stated, the trial court addressed not only the motion for leave to file a motion for new trial, but also the merits of the motion for new trial based on newly discovered evidence. Because, as will be explained infra, we affirm the trial court's judgment in this respect, appellant's first assignment of error is moot. See *State v. Brown*, 7th Dist. No. 1O MA 17, 201O-Ohio-405.

(Doc. 11-4, PAGEID #241).

The Magistrate Judge relied upon *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) to conclude that the trial court's decision on the procedural default issue was the last reasoned decision, and therefore the state courts invoked the procedural bar. The Sixth Circuit has explained the application of *Ylst* as follows:

> To determine whether state courts have clearly and expressly invoked a state procedural bar, a federal habeas court looks to the last state court to be presented with the federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Thus, even where a state trial court or appellate court expressly invokes a state procedural bar, federal habeas review may not be precluded if the state's highest court instead reaches the merits of the claim without expressly ruling on the

10

procedural question. *Id.* However, where the last state-court judgment is an "unexplained" order upholding a prior judgment or rejecting the same claim, a federal court applies a presumption that gives the unexplained judgment "no effect" and "simply 'looks through' ... to the last reasoned decision." *Id.* at 804, 111 S.Ct. 2590.

*Stokes v. Scutt*, 527 F. App'x 358, 364–65 (6th Cir. 2013). The Supreme Court in *Ylst* defined the term "unexplained" order as "an order whose text or accompanying opinion does not disclose the reason for the judgment." 501 U.S. at 802.

This Court finds that the Franklin County Court of Appeals' order is not "unexplained." The language cited above makes clear that the appeals court understood that the trial court found the *Brady* claim procedurally defaulted, but in the alternative ruled on the merits of the *Brady* claim. The court then expressly decided to address the merits of the claim, rendering moot the trial court's ruling on the procedural question. Therefore, the procedural bar does not prevent this Court from hearing Petitioner's habeas claim. *Accord Madrigal v. Bagley*, 276 F. Supp. 2d 744, 765 (N.D. Ohio 2003), *aff'd*, 413 F.3d 548 (6th Cir. 2005) ("Because the appellate court, the last court to make a reasoned decision, did not clearly and expressly rest its decision on the res judicata doctrine, Madrigal's twelfth claim is not procedurally barred."). To the extent that the Magistrate Judge concluded that Petitioner's *Brady* claim is procedurally defaulted, the Court finds that the Magistrate Judge's order is contrary to law. Accordingly, Petitioner's objections are sustained on this issue.

### III. **CONCLUSION**

Based on the foregoing, Petitioner's objections to the Magistrate Judge's May 1, 2017 Decision and Order (Doc. 96) and July 27, 2017 Supplemental Opinion (Doc. 106) are OVERRULED in PART and SUSTAINED in PART. The Magistrate Judge's May 1,

2017 Decision and Order (Doc. 96) and July 27, 2017 Supplemental Opinion (Doc. 106) are modified in a manner not inconsistent with this Order.

**IT IS SO ORDERED.**

                                       */s/Michael R. Barrett*
                                 JUDGE MICHAEL R. BARRETT