# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

        Petitioner,

        -vs-

DAVID BOBBY, Warden,

        Respondent.

:

:

:

Case No. 2:10-cv-391

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

---

# DECISION AND ORDER DENYING MOTIONS FOR DISCOVERY AND TO STAY

---

This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner Robert Bethel's Renewed Motion for Leave to Conduct Discovery (Motion for Leave, ECF No. 120) and a Motion to Stay Federal Habeas Proceedings (Motion to Stay, ECF No. 125). The Respondent Warden opposes BOTH (Memos. in Opp., ECF Nos. 122) and Petitioner has filed replies in support (ECF Nos. 123, 127). For the reasons set forth below, Petitioner's Motion for Discovery and Motion to Stay are DENIED.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner previously filed a Motion for Evidentiary Hearing as to his Fifteenth Ground for Relief—that he "was denied due process and a fair trial under the Sixth and Fourteenth Amendments when the state failed to provide him with favorable evidence that was material to his

defense." (Decision and Order, ECF No. 96, Page ID 8535, quoting First Amended Petition, ECF No. 48, PageID 650, citing *Brady v. Maryland*, 373 U.S. 83 (1963)). On May 1, 2017, the Magistrate Judge denied that motion, finding the Fifteenth Ground to be procedurally defaulted. *Id*., Page ID 8545. On July 27, 2017, the Magistrate Judge issued a Supplemental Opinion (ECF No. 106), noting that Ohio state courts—specifically, the Franklin County, Ohio, Court of Common Pleas and the Tenth District Court of Appeals—had reached the merits of Petitioner's *Brady* claim. *Id*., Page ID 8650, citing State Court Record, ECF No. 11-2, Page ID 206. Common Pleas Judge Richard Frye found that Petitioner had not been diligent in discovering the report of Bureau of Alcohol, Tobacco, and Firearms ("ATF") Special Agent Daniel F. Ozbolt ("Ozbolt Report" or "ATF Report"); moreover, he found no "evidence that the ATF Report was either intentionally suppressed or in a file where it simply was overlooked by the prosecutors or Columbus Police. The ATF Report did not mention Mr. Bethel at all." (State Court Record, ECF No. 11-2, Page ID 206). Finally, the trial court concluded that the Ozbolt Report was not material, as "[n]o new avenue was suggested by the ATF Report on how to convincingly attack [police informant Donald] Langbein[1][,]" and that

> Considering the entire record, including Bethel's own statements admitting to killing Reynolds and Hawks and the material variance between the alleged crime memorialized in the ATF Report and the crimes as they occurred here, a new trial for Bethel would not be appropriate. *The court's confidence in the outcome of defendant Bethel's trial has not been undermined.*

*Id*., Page ID 206, 207 (emphasis added). The Tenth District affirmed the trial court's decision. *State v. Bethel*, 10th Dist. Franklin No. 09-AP-924, 2010-Ohio-3837 (Aug. 17, 2010).

---

1 Langbein, in exchange for a more lenient sentence, agreed to cooperate with police by wearing a wire while speaking with Bethel, who made inculpatory statements that he killed James Reynolds ("Reynolds") and Shannon Hawks ("Hawks") with a 9 mm handgun (State Court Record, ECF No. 11-2, Page ID 206). Bethel "was convicted of the aggravated murders of Reynolds and Hawks and was sentenced to death." *State v. Bethel*, 110 Ohio St. 3d 416, 2006-Ohio-4853, ¶ 1.

"The Magistrate Judge found that the premise of the Motion for Discovery was that the Ozbolt Report was *Brady* material[,] and that [that] premise was undermined by the Ohio courts' decision that it was not, a conclusion entitled to [Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ('AEDPA')] deference."  (Supp. Opinion, ECF No. 106, Page ID 8651, citing Decision and Order, ECF No. 69, Page ID 8303).  He also reiterated his earlier finding that Petitioner's *Brady* claim was procedurally defaulted, based on the trial court's finding that he had not demonstrated due diligence, as he waited almost five years from the date of his conviction to make the public records request for the Ozbolt Report, and more than five months from the time he got the report (November 2008) before moving for a new trial (April 2009).  *Id.*, Page ID 8655, citing State Court Record, ECF No. 11-2, Page ID 203-06; Decision and Order ECF No. 96, Page ID 8545.

Petitioner objected to both the initial and supplemental decisions, ECF Nos. 100, 111, and on March 18, 2018, Judge Barrett sustained in part and overruled in part Petitioner's objections (Opinion & Order, ECF No. 118, Page ID 8718).  The Court noted the Tenth District's recitation of the evidence introduced against Petitioner, including his statement to his then-girlfriend, Theresa Cobb Campbell, that he and co-defendant Jeremy Chavis had killed Reynolds and Hawks, and his proffer, made as part of a (subsequently-voided) plea agreement, in which he described in detail his commission of the murders (along with Chavis).  *Id.*, Page ID 8722-23, citing State Court Record, ECF No. 11-4, Page ID 236-37, 243.  In light of:  (a) that strong evidence; (b) vigorous cross-examination of Langbein by Petitioner's counsel; and (c) the fact that the Ozbolt Report did not contain statements in which Langbein actually admitted involvement in the murders, the Tenth District found that the Ozbolt Report was not material (State Court Record, ECF No. 11-4, Page ID 243-44; *see also Eakes v. Sexton*, No. 14-5017, 592 F. App'x 422, 427-28 (6th Cir. 2014),

quoting *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (impeachment evidence is material for *Brady* purposes only if it "would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration[.]").  The Magistrate Judge concluded that the state court decision was not an unreasonable application of clearly established federal law (Decision and Order, ECF No. 96, Page ID 8539, citing 28 U.S.C. § 2254(d)(1)), and Judge Barrett found "that the Magistrate Judge's order was not clearly erroneous or contrary to law."  (Opinion & Order, ECF No. 118, Page ID 8724).

Judge Barrett also held that the Magistrate Judge's conclusion that the Tenth District properly found that the Ozbolt Report was not suppressed by the State of Ohio "was not an unreasonable determination of the facts."  (Opinion & Order, ECF No. 118, Page ID 8724).  In its decision, the Tenth District noted that the Ozbolt Report was "titled 'CHAVIS, Jeremy' and ma[de] no reference whatsoever" to Petitioner, and there was no evidence of when, if ever, the Report was transferred from ATF to the Columbus Police and placed in Petitioner's file.  The State had no duty to disclose information that was only in the possession of federal authorities.  Thus, Petitioner had presented no evidence that the State actually suppressed the Report.  *Id*., quoting State Court Record, ECF No. 11-4, Page ID 242.  Further, the Tenth District held, even if the Ozbolt Report had been suppressed, there was no reasonable probability that its disclosure would have resulted in "a different trial outcome[.] . . . Thus, we find no *Brady* violation[.]"  State Court Record, ECF No. 11-4, Page ID 242.

Moreover, Judge Barrett affirmed the Magistrate Judge's conclusion that the Ozbolt Report's double hearsay—*i.e.*, Williams's recitation to Ozbolt of what Langbein had told Williams—weighed against finding that the Report was material (Opinion & Order, ECF No. 118, Page ID 8725-26, citing Decision and Order, ECF No. 96, Page ID 8539).  Further, the District

Court adopted the Tenth District's recitation of "other evidence in the record which undermined the reliability of the Ozbolt [R]eport[.]" *Id*., Page ID 8726. However, Judge Barrett found as contrary to law the Magistrate Judge's conclusion that Petitioner's *Brady* claim was procedurally defaulted, sustained Petitioner's objections as to that conclusion, and modified the original and supplemental decisions accordingly. *Id*., Page ID 8728-29, citing Decision & Order, ECF No. 96; Supp. Opinion, ECF No. 106. Importantly for the present purposes, the portions of Magistrate Judge's decisions denying Petitioner an evidentiary hearing and leave to conduct discovery remained in effect and unchanged.

On May 1, 2018, Petitioner filed the instant Renewed Motion for Leave to Conduct Discovery (ECF No. 120). Therein, he argues that he had discovered new evidence that corroborates the subject matter of the Ozbolt Report. *Id*., Page ID 8737, citing Opinion & Order, ECF No. 118, Page ID 8726. Petitioner claims to have discovered the statements of a Ronald Withers, who told Ozbolt on July 1, 2001, that Chavis had told him that Langbein (Chavis's cousin) was the shooter. *Id*., citing Informational Summary, ECF No. 95-9, Page ID 8533; Aff. of Ronald Withers, ECF No. 120-1. Petitioner also obtained a Columbus Police memorandum entitled "Police Progress of Investigation Informational Summary 85." *Id*., Page ID 8744. The memorandum listed eleven tapes in the possession of the police that contained twenty-seven conversations involving Chavis and/or Langbein, all of which took place "between July 22, 2000[,] and August 19, 2000, shortly before Langbein—then charged with an unrelated federal firearms violation—agreed to wear a concealed recorder during conversations with Bethel, and Bethel's subsequent arrest in this case." *Id*., Page ID 8738. Despite making public records requests, Petitioner was able to obtain only four of the tapes, which contained twelve of the twenty-seven phone calls. The State still refuses to turn over the remaining recordings or other statements, in

derogation, Petitioner argues, of a continuing obligation to do so. *Id*., Page ID 8738, 8740-41, citing Ohio Crim. R. 16(B)(1)(a). Nonetheless, in one of the calls, Chavis told an unidentified female that he had "taken the rap" for Langbein with respect to the murders. *Id*., Page ID 8738.

Had the memorandum and recordings been produced in pretrial discovery, Petitioner argues, his trial counsel could have investigated further Langbein's involvement in the murders of which Bethel was convicted. He claims the evidence is material because the Supreme Court of Ohio found Langbein's testimony to be "key evidence supporting Bethel's conviction." (Discovery Motion, ECF No. 120, Page ID 8739, quoting *State v. Bethel*, 110 Ohio St. 3d 416, 2006-Ohio-4853, ¶ 101). Petitioner argues that this corroborating evidence, once introduced on cross-examination, would have implicated Langbein as a potential culprit, and thus, would have caused at least one juror to have reasonable doubt about Petitioner's culpability. *Id*., Page ID 8740. He claims that, in light of the materials he has been able to obtain thus far, he has demonstrated sufficient knowledge of suppressed evidence to show that his Motion for Leave is not "a fishing expedition masquerading as discovery." *Id*., Page ID 8741, quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Further, Petitioner argues that *State ex rel Caster v. The City of Columbus*, in which the Supreme Court of Ohio held "that the exemption that shielded law enforcement investigatory files from disclosure under Ohio's public records law did not extend beyond completion of the relevant trial[,]" applies retroactively (Discovery Motion, ECF No. 120, Page ID 8742-43, citing 151 Ohio St. 3d 425, 2016-Ohio-8394, ¶¶ 19, 44, 47; *State v. Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, ¶¶ 11-13 (Jan. 12, 2006). Petitioner claims that, as soon as *Caster* was issued, he made public records requests to the Franklin County, Ohio, Sheriff's Office, which represented that it had no relevant or responsive records. *Id*., Page ID 8744 (citing Public Records Requests, ECF

No. 95-1, Page ID 8524; ECF No. 95-2, Page ID 8525). On January 9, 2017, Petitioner submitted a public records request to the Columbus Police, which "resulted in additional documents disclosed to Bethel for the first time that contained information relevant to his *Brady* claim, which prompted Bethel to submit additional requests on March 16, 2017, to the Columbus Division of Police for all records relating to Cheveldes Chavis, Jeremy Chavis, and Donald Langbein." *Id*. (citing Public Records Requests, ECF 95-6, PageID 8529; ECF 95-7, PageID 8530; ECF 95-8, PageID 8531). That request, in turn, yielded the memorandum detailing the phone calls. On April 25, 2017, Petitioner submitted a new request to the Columbus Police, requesting "all cassette tapes mentioned in informational summary 85[,]" and on May 18, 2017, the police department provided the four tapes discussed above. *Id*., quoting Public Records Request, ECF No. 97-2, Page ID 8558. In response to a final request by Petitioner on May 24, 2017, the police department represented that it did not possess the remaining tapes. *Id*., Page ID 8744-45.

Most importantly for this Motion, Petitioner argues, the evidence that the State supposedly suppressed was material and sufficiently exculpatory as to undermine confidence in the verdict. Langbein was one of the State's key witnesses, having provided police with the identities of Bethel and Chavis, their manner in which they supposedly committed the murders, and his (Langbein's) knowledge of the murders after the fact (Reply, ECF No. 123, Page ID 8769-70, citing Return of Writ App'x, ECF No. 54-9, Page ID 3017-18). The suppressed evidence, Petitioner claims, undermines Langbein's credibility, which makes it probative both for its substance and for impeachment purposes, and thus, would be admissible as non-hearsay. *Id*., Page ID 8769, 8774, 8775, citing *Wearry v. Cain*, --- U.S. ----, 136 S. Ct. 1002, 1006 (2016); *Smith v. Cain,* 565 U.S. 73, 76 (2012); *Banks v. Dretke,* 540 U.S. 668, 700-01 (2004); *Strickler v. Greene,* 527 U.S. 263, 293-94 (1999); *United States v. Agurs,* 427 U.S. 97, 112-13 n.21 (1976); *Giglio v. United States,*

405 U.S. 150, 154-55 (1972); *Napue v. Illinois,* 360 U.S. 264, 269 (1959); *Bies v. Sheldon*, 775 F.3d 386, 400 (6th Cir. 2014); *Gumm v. Mitchell*, 775 F.3d 345, 369 (6th Cir. 2014); Ohio R. Evid. 613, 616(A). Had counsel been in possession of the evidence, Petitioner argues, he "could have used the suppressed report where Chavis implicated Langbein to suggest Langbein's guilt and argue that [Langbein] attempted to frame Bethel." *Id.*, Page ID 8770, citing *D'Ambrosio v. Bagley*, 527 F.3d 489, 498-99 (6th Cir. 2008). In support, he claims, Chavis's statement that he "took the rap" is consistent with Langbein's and Chavis's implicating each other as the shooters, and Langbein's previously confessing to the homicide. *Id.*, Page ID 8773, citing Interview of Shannon Williams, ECF No. 60-1, Page ID 7942; Discovery Motion, ECF No. 120, Page ID 8738. Although "the Warden again counters that 'the defense already had ample reason to investigate Langbein as a possible alternate suspect[,]' . . . this incentive to counter Langbein's testimony is exactly why the suppressed documents and information are material, where trial counsel tried and failed to impeach Langbein[.]" *Id.*, Page ID 8771, quoting Memo. in Opp., ECF No. 122, Page ID 8759; citing *Robinson v. Mills*, 592 F.3d 730, 737 (6th Cir. 2010). In sum, Petitioner argues, the inability or unwillingness of governmental entities to produce relevant, responsive materials, to which he is entitled and which are germane to his *Brady* claim, necessitates Court-ordered discovery. (Discovery Motion, ECF No. 120, Page ID 8745-46).

On October 9, 2018, Petitioner filed the Motion to Stay, arguing that the materials that he had obtained since filing his Amended Petition gave rise to a new *Brady* claim, which he is required to exhaust before this Court may consider the claim on its merits (ECF No. 125, Page ID 8868).

## LEGAL STANDARDS

### A.    *Brady* Claim

The State has a duty to produce exculpatory evidence in a criminal case. If the State withholds evidence and it is material, the conviction must be reversed. *Brady v. Maryland*, 373 U.S. 83 (1963). To achieve this goal, "*Brady* held 'that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Kyles v. Whitley*, 514 U.S. 419, 432 (1995), quoting *Brady*, 373 U.S. at 87. To meet his prima facie burden under *Brady*, Petitioner must show that: (a) the State suppressed evidence, in derogation of its ongoing duty to produce evidence favorable to Petitioner, even in the absence of a specific request, *id.* at 433-34 (citations omitted); (b) the suppressed evidence was favorable to Petitioner, either because it is exculpatory or it undermines the prosecution's case, *Strickler*, 527 U.S. at 281-82; and (c) the evidence was material, with a reasonable probability of a different outcome; in other words, its absence deprived Petitioner of "a understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434 (internal quotation marks and citation omitted). In determining whether a *Brady* violation has occurred, the Court must evaluate the favorability and materiality of the suppressed evidence in light of the entire state court record. *Id.* at 436.

### B. Motion to Stay

Due to principles of comity and judicial economy, federal courts have long been precluded, as a general rule, from adjudicating claims raised in habeas corpus that have not been exhausted in the state courts. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9 (1992); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 522 (1982). The decision on whether to hold

habeas proceedings in abeyance, so that a petitioner may raise claims based on newly discovered evidence to the state court (the proper venue for hearing the claims in the first instance), is within the district court's sound discretion. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005); *Cowan v. Stovall*, 645 F.3d 815, 820-21 (6th Cir. 2011). The petitioner must "[1]] show good cause for failing to present the claims before the state court in the first instance, and 2) show that his unexhausted claims are not 'plainly meritless.'" *Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009), quoting *Rhines*, 544 U.S. at 277.

### C.      Motion for Leave to Conduct Discovery

A habeas petitioner is not entitled to discovery or an evidentiary hearing as a matter of course, but only after the Court determines that Petitioner has made a showing of good cause to do so. Rule 6(a), Rules Governing § 2254 Cases; *Bracy v. Gramley*, 520 U.S. 899, 901 (1997); *Harris v. Nelson*, 394 U.S. 286, 295-96 (1969). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *citing Murphy v. Johnson,* 205 F.3d 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery[,]" or for the Court to "require an evidentiary hearing." *Id*., *quoting Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991).

In order to obtain an evidentiary hearing in federal court on a claim on which he has not fully developed the factual basis in state court, a habeas corpus petitioner must show cause and

prejudice.  *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 2, 11 (1992), *superseded by statute on other grounds as stated in Williams v. Taylor*, 529 U.S. 420, 432 (2000), *citing Wainwright v. Sykes*, 433 U.S. 72, 87-88 & n.12 (1977).  Logically, there is no good reason to gather evidence which one will not be permitted to present because one cannot satisfy the *Keeney* standard.  Therefore, if there are items of evidence sought in discovery which could have been obtained and presented during the state court process but were not, a petitioner should make the required *Keeney* showing before being authorized to conduct discovery to obtain the evidence.

## ANALYSIS – MOTION TO STAY

Petitioner asks this Court to "stay the proceedings and hold them in abeyance pending the outcome of a new trial motion filed in the Franklin County Court of Common Pleas. The new trial motion provides the state court with its first opportunity to review newly discovered exculpatory, material evidence that the State improperly suppressed[.]"  (Motion to Stay, ECF No. 125, Page ID 8868, citing Notice of State Court Litigation, ECF No. 124-1, 124-2).  In support, Petitioner notes that he received from the Columbus, Ohio, Police Department, as the result of a 2008 public records request, the transcript of a conversation between a Donald Langbein, an inmate, the State's main witness against Petitioner at trial, and the cousin of Petitioner's co-defendant Jeremy Chavis, and a Shannon Williams (also known as "Puff"), a fellow inmate and also a government informant.  *Id*.  The transcript contained a statement in which Langbein told Williams that "he was involved in a homicide with an individual who is now incarcerated at the Federal Penn.[sic], Ashland, KY, where the victim was shot seventeen times."  *Id.*, quoting Return of Writ App'x, ECF No. 55-7, Page ID 4593.  Chavis was incarcerated at the Federal Correctional Institution - Ashland at the time Langbein made the statement to Williams, and "[b]ased on this report," Petitioner argues, "it

appears that Langbein admitted that he and Chavis, *not Bethel,* killed Shannon Hawks and James Reynolds." *Id.* This report was never disclosed to Petitioner's counsel, despite repeated requests for all *Brady* material. Upon discovery, Petitioner obtained leave of this Court to stay the proceedings with respect to his initial Petition so that he could return to state court and exhaust his *Brady* claim via a motion for a new trial. The motion was denied, and on March 4, 2013, after the Supreme Court of Ohio declined jurisdiction, Petitioner filed his Amended Petition. *Id.*, Page ID 8869-70 (citations omitted).

Petitioner subsequently discovered a report ("Summary 86") of a July 1, 2001, conversation among Withers, Ozbolt, and Columbus Police Detective Edward K. Kallay, Jr., in which Withers told Ozbolt that Chavis had told him "that his cousin, who was also incarcerated, was the other shooter. Withers provided an affidavit confirming that Chavis told him this information, and that Withers relayed it to detectives from the Columbus Police Department in 2001." (Motion to Stay, ECF No. 125, Page ID 8870, citing Aff. of Ronald Withers, ECF No. 124, Page ID 8800-01). Despite the exculpatory statements therein and repeated requests for all *Brady* material, Summary 86 was never provided to Petitioner's counsel. *Id.*, Page ID 8870-71.

Petitioner argues that Langbein's statement to Puff (in the Ozbolt Report) and Withers's statement to Ozbolt and Kallay strongly implicate "[t]he existence of a legitimate suspect other than [Petitioner.]" (Motion to Stay, ECF No. 125, Page ID 8878, citing *Bies*, 775 F.3d at 400). He claims that Summary 86 is so probative that the State's withholding of it, and the consequent inability of Petitioner to introduce it, resulted in a verdict not worthy of confidence, and thus, Summary 86 satisfies the materiality prong of *Brady*. *Id.*, citing *Kyles v. Whitley*, 514 U.S. 419, 435, 440 (1995). Finally, he claims, the statements provide independent corroboration of the Ozbolt Report as to Langbein's involvement (and Petitioner's lack thereof) in the murders "that

this Court indicated could support further relief." *Id.*, Page ID 8879, citing Opinion & Order, ECF No. 118, Page ID 8726.

For several reasons, the Court is dubious that Summary 86 can form the basis for a viable *Brady* claim. *First*, the statements in Summary 86 are inadmissible hearsay by themselves. However, Petitioner, in his Motion for Discovery, offered the affidavit of Ronald Withers, who averred that he recounted Chavis's statements during his interview with the Columbus Police Department in July 2001 (Withers Aff., ECF No. 120-1, ¶¶ 7-9, Page ID 8749-50). Thus, Withers may be able to attest to the statements that he made. *Second*, the supposedly exculpatory statements made by Withers to Ozbolt and Kallay were not his personal opinions or impressions, but rather, Withers relaying what Chavis told *him*. *Id.*, ¶ 8, Page ID 8750. Thus, there exists a second level of hearsay, and Petitioner does not identify any exclusion or exception that would have permitted the statements to be introduced at trial for the truth of the matters asserted. Ohio R. Evid. 801, 803, 804. While Summary 86 itself need not be admissible for a stay to be granted, Petitioner has failed to articulate how Summary 86 demonstrates that further discovery might reasonably be expected to lead to the discovery of admissible evidence such that a stay is warranted. *Third*, the inadmissibility of the statements for the truth of the matters asserted limit their ability to be "the 'corroborating circumstances which would indicate the trustworthiness of the statement" contained in the Ozbolt Report, which, as Judge Barrett held previously, was a prerequisite to taking further discovery (Opinion & Order, ECF No. 118, Page ID 8726).

In his memorandum *contra*, the Warden presents an additional argument as to why the Motion to Stay is not well-taken, because Petitioner does not present a "mixed petition" of exhausted and unexhausted claims, for which stay and abeyance while a petitioner returns to state court is appropriate (Memo. in Opp., ECF No. 126, Page ID 8884-85, citing *Rhines v. Weber*, 544

U.S. 269, 271-77 (2005)).  Rather, the Motion is an attempt to buttress the *Brady* claim at issue in

his Amended Petition, which is already exhausted.  *Id*., Page ID 8885, citing Order, ECF No. 13.

While the Sixth Circuit has flatly rejected the premise that "*Rhines* permits stays for a petitioner

to 'exhaust evidence'—in other words, to return to state court to submit additional evidence to

buttress claims already exhausted,"  the Court did acknowledge that "potential exculpatory

evidence discovered in federal habeas proceedings could constitute a new claim outside the bar to

new evidence announced by the majority [in *Cullen v. Pinholster*, 563 U.S. 170 (2011)], and the

majority left open the possibility that this could constitute a new claim."  *Carter v. Mitchell*, 829

F.3d 455, 466, 467 (6th Cir. 2011) citing *Pinholster*, 563 U.S. at 186 n.10 (2011).  The petitioner

in *Carter* was not claiming that the State had failed to disclose any evidence; rather, "Carter simply

neglected to submit relevant documents to the jury or attach much additional information to his

post-conviction petition."  *Id*.  Consequently, the *Carter* court held, the petitioner was attempting

"to use *Rhines* as an end-run around *Pinholster,* with the added benefit that a return to state court

might delay his impending death sentence for a substantial period."  *Id*. at 467.

Petitioner attempts to distinguish *Carter* by claiming that he did not discover Summary 86

until after his *Brady* claim was exhausted, and he filed his Amended Petition (Motion to Stay, ECF

No. 125, Page ID 8870; Reply, ECF No. 127, Page ID 8889).  Yet, even if the discovery of

Summary 86 were to create a new, unexhausted *Brady* claim, the Motion to Stay would still be

unavailing.  While Petitioner states that the "Warden does not challenge Bethel's assertions that

the 'Summary 86' police report was suppressed[,]" (Reply, ECF No. 127, Page ID 8887), that

statement is inconsistent with the standard that Petitioner bears the *prima facie* burden to "show

good cause for failing to present the claims before the state court in the first instance[.]"  *Id*., citing

*Wagner*, 581 F.3d at 419.  Petitioner offers only the following conclusory statement in his attempt

to show good cause: "Subsequent to the filing of the Amended Petition, Bethel discovered another police report, captioned 'Summary 86.'" *Id.*, citing Police Progress of Investigation, ECF No. 95-9. Petitioner gives no indication of when he discovered Summary 86 or how he obtained it. Without more, he has not demonstrated good cause as to why, five years after filing his Amended Petition, he is just now seeking to return to state court. Further, while Summary 86 lists Kallay as the interrogating detective, it is signed by Ozbolt, who is not a member of the Columbus Police (Police Progress of Investigation, ECF No. 95-9, ECF No. 8532, 8534), and Petitioner offers no insight as to when, if ever, Summary 86 came into the possession of the State. Without such information, the Court cannot determine whether the State even suppressed the material.

Further, Summary 86 could have been used only for a very narrow purpose, and the statements contained therein are of limited probative or corroborative value. In his Reply, Petitioner claims that the Warden does not "challenge the evidence on the favorability or materiality prongs of *Brady*." (ECF No. 127, Page ID 8887). Yet, for the reasons discussed above, Petitioner has not met either the favorability or materiality prong with respect to Summary 86. Finally, the Court must be mindful of the "AEDPA's purpose of achieving finality . . . when deciding the propriety of a stay." *Carter*, 829 F.3d at 467. In light of the above, the Court concludes that Petitioner has still not demonstrated good cause to stay this proceeding and return to state court, and the Motion to Stay is denied.

## ANALYSIS – MOTION FOR DISCOVERY

### A.    Applicability of *Pinholster*

The Warden argues that the State Court's adjudication of Petitioner's *Brady* claim on its merits means that the Court may not review any materials outside of the state court record (Memo.

in Opp., ECF No. 122, Page ID 8755, citing *Pinholster*, 563 U.S. at 185 (2011); *Loza v. Mitchell*, 766 F.3d 466, 494 (6th Cir. 2014)). He claims that, even though *Pinholster* "did not address the availability of discovery in federal habeas proceedings," the majority of courts, including within the Sixth Circuit, "are applying *Pinholster* to discovery in habeas proceedings and denying petitioners' requests for discovery of evidence that *Pinholster* would bar from their review." *Id.*, Page ID 8755-56, quoting *Broom v. Bobby*, 2018 U.S. Dist. LEXIS 57564, at *9 (N.D. Ohio Apr. 4, 2018); citing *Caudill v. Conover*, 871 F. Supp. 2d 639, 646-47 (E.D. Ky. 2012); *Davis v. Bobby*, No. 2:10-cv-107, 2017 U.S. Dist. LEXIS 90624, at *5 (S.D. Ohio Jul. 13, 2017) (Jolson, Mag. J.), *report and recommendations adopted at* 2018 U.S. Dist. LEXIS 67993 (S.D. Ohio Apr. 23, 2018) (Sargus, C.J.); *Blevins v. Warden, Ross Corr. Inst.*, No. 1:05-cv-38, 2011 U.S. Dist. LEXIS 142011, at *8-9 (S.D. Ohio Dec. 9, 2011) (Merz, Mag. J.)); *but see Group v. Robinson*, 132 F. Supp. 3d 954, 960 (N.D. Ohio 2015), citing *Conway v. Houk*, No. 2:07-cv-947, 2011 U.S. Dist. LEXIS 57228 (S.D. Ohio May 26, 2011) (McCann King, Mag. J.) ("The Supreme Court and the Sixth Circuit have not declared whether a habeas petitioner can stage discovery in this way").

Petitioner argues that *Pinholster* "did not eradicate the possibility of factual development in *habeas* (Reply, ECF No. 123, Page ID 8764, citing *Brumfield v. Cain*, --- U.S. ----, 135 S.Ct. 2269, 2273 (2015)). He claims that when, as here, the state court makes evidentiary findings without giving petitioner the chance to develop the facts, then those findings are unreasonable determinations of the facts under 28 U.S.C. § 2254(d)(2), and "permitting discovery beyond the state court record does not go against 'Congress'[s] intent to channel prisoners' claims first to the state courts.'" *Id.*, Page ID 8765, quoting *Pinholster*, 563 U.S. at 182; citing *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004,) *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). Moreover, Petitioner claims to have made a "sufficient effort to

develop and present evidence in state court, but [was] unreasonably thwarted," making federal discovery the only avenue by which he can obtain the evidence necessary to prosecute his *Brady* claim. *Id*. In support, he notes the following language from *Pinholster*: "[28 U.S.C.] § 2254(e)(2) should be interpreted in a way that does not preclude a state prisoner, who was diligent in state habeas court and who can *satisfy* § 2254(d), from receiving an evidentiary hearing." *Id*., Page ID 8767 (emphasis in original), quoting *Pinholster*, 563 U.S. at 184 n.5.

The Warden is correct that the trend among district courts, particularly within the Sixth Circuit, has been to apply *Pinholster* to bar discovery and evidentiary hearings regarding evidence that cannot properly be considered by this Court. Nonetheless, Judge Barrett concluded that Petitioner's *Brady* claim was not procedurally defaulted for failure to comply with the state law limitations on time to file a motion seeking a new trial (Opinion & Order, ECF No. 118, Page ID 8728). Moreover, Petitioner's efforts to obtain the materials, as described above, suggested that he has been diligent in attempting to obtain all materials supporting his *Brady* claim. If he was unable to do so because of improper suppression by the State, then the *Pinholster* limitation is inapplicable, and the Court must review Petitioner's *Brady* claim with new evidence.

**B.    Suppression**

Petitioner argues that neither the memorandum nor the tapes were ever turned over to him; nor were their respective existences disclosed by the State (Discovery Motion, ECF No. 120, Page ID 8737-39). Moreover, the Ozbolt Report was never disclosed to him, despite its coming into the possession of the Columbus Police Department, and despite the State's ongoing obligation to learn of and produce exculpatory evidence, even if the State was not aware of such evidence prior to or at the time of trial. *Id*., Page ID 8740-41, citing *Kyles*, 514 U.S. at 437, Ohio Crim. R. 16(B)(1)(a).

The Warden argues that the State did not suppress any such evidence, as the Ozbolt Report was not "the type of material, exculpatory evidence which the Due Process Clause requires the prosecution to disclose[,]" and neither are the materials sought in discovery (Memo. in Opp., ECF No. 122, Page ID 8756). This argument is premature, as the Court must first determine whether the evidence was material and exculpatory before it can determine whether it was wrongfully withheld for *Brady* purposes. Nonetheless, the evidence must have been in the State's *possession* for the Court to reasonably conclude that it was suppressed. *Pennsylvania v. Richie*, 480 U.S. 39, 57 (1987). While Petitioner obtained the Ozbolt Report after the trial, he has not set forth evidence that the report was in the State's possession at any time prior to or during trial. Indeed, he has presented no evidence as to how or when this federal report came into the State's possession. The Tenth District found that:

> [I]t is not clear that the ATF report was 'suppressed' by either the prosecution or the Columbus police. As noted by the trial court, there is no indication as to when this report, titled 'CHAVIS, Jeremy' and making no reference whatsoever to appellant, came into the possession of the police department or when it was placed in connection with the file on appellant.

*State v. Bethel*, 10th Dist. Franklin No. 09AP-924, 2010-Ohio-3837, ¶ 19 (Aug. 17, 2010). The issue of the alleged suppression of the Ozbolt Report was conclusively litigated in this Court (ECF Nos. 106, 118), and Petitioner has not introduced new evidence that would cause the Magistrate Judge to re-evaluate his decision. Thus, the Court does not conclude that the Ozbolt Report was suppressed, and the report cannot be part of a viable *Brady* claim.

However, the memorandum and recordings were, unlike the Ozbolt Report, originally created and maintained by state authorities, and presumably should have been disclosed upon the proper request by Petitioner, yet were not. Thus, for the purposes of this Motion only, the Court considers the memorandum and recordings described in the Motion as having been suppressed.

## C.       Favorability

The Warden argues that, even if the State possessed and suppressed the memorandum and tape recordings described above, and its failures to disclose that information violated Rule 16, the failures do not, by themselves, constitute grounds for granting leave to conduct discovery.  Rather, the Court must have "reason to believe that if the facts are fully developed, the prisoner will be able to show that he is entitled to habeas corpus relief."  (Memo. in Opp., ECF No. 122, Page ID 8757, citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

The Warden argues that, for several reasons, Petitioner cannot make a prima facie showing of favorability under *Brady*.  *First*, he claims that, in light of the Court's concerns about lack of "corroborating circumstances which would indicate the trustworthiness of the statement" in the Ozbolt Report (Opinion & Order, ECF No. 118, Page ID 8726, citing State Court Record, ECF No. 11-4, Page ID 243), the new documents do nothing to assuage those concerns (Memo. in Opp., ECF No. 122, Page ID 8758).  Rather, he argues, "the Columbus Police Report gives rise to numerous discrepancies which thoroughly undermine its relevance."  *Id*.  The report contained the following alleged statements from Chavis:

>   (1) "[H]ow much time he'd [*sic*] get on a homicide if he makes a deal;"
>   (2) "[W]hen [Chavis] shot the individual he was already dead;"
>   (3) "[B]allistics will show that his bullet was not the fatal shot;" and
>   (4) "[H]is cousin was the other shooter."

*Id*., citing Police Progress of Investigation, ECF No. 95-9, Page ID 8533.  The Warden argues that "[t]hose statements are inconsistent with both the established facts and Langbein's reported statements."  *Id*.  Specifically, the Warden notes that the report contained no statement about the fact that Chavis and Bethel were charged with double homicide, in which the victims were shot numerous times.  "It seems highly unlikely[,]" the Warden opines, "that in asking for an opinion

on what sentence he might get, Chavis would neglect to mention" that he was charged with killing two individuals. *Id.*, Page ID 8758. Further, the Warden argues, "[i]t is undisputed that the victims were shot multiple times, and that more than one of the shots could have been fatal. It is not likely that Chavis would think ballistics tests would come into play in such circumstance." *Id.*, Page ID 8758-59.

*Second*, Chavis, as a co-defendant, did not testify against Petitioner, and hearsay rules would have barred Withers or Petitioner himself from testifying as to Chavis's statements. Thus, the statements, and any related evidence that would have been reasonably discoverable, could not have been introduced at trial (Memo. in Opp., ECF No. 122, Page ID 8759). *Finally*, the Warden notes that Petitioner has failed to identify the female with whom Chavis is discussing Langbein's purported culpability, and provides no other information regarding the recordings. *Id.*, citing Discovery Motion, ECF No. 120, Page ID 8738. Thus, the Warden claims that Petitioner's descriptions of Chavis's phone calls "do[] not describe specifically any of the allegedly material conversations, rendering it impossible for the Court to determine whether in law or fact the conversations are or could reasonably lead to material, exculpatory evidence[,]" *id.*, Page ID 8759, and consequently, the Motion should be denied.

Petitioner argues that the evidence obtained, when viewed in the context of Langbein's importance to the case, is highly favorable toward him (Reply ECF No. 123, Page ID 8766, 8769). He notes that Langbein provided police with the identities of Bethel and Chavis, their motive, and specific details about the murders. *Id.*, Page ID 8769-70, citing Return of Writ App'x, ECF No. 54-9, Page ID 3017-18. Thus, the memorandum and recordings, Petitioner argues, provide corroboration to his argument with respect to the Ozbolt Report: that Langbein, despite being the State's "star witness," whose wire recordings and testimony constituted much of the inculpatory

evidence against Bethel, actually committed the murders with Chavis. *Id*., Page ID 8766. Thus, he claims, he has met the favorability prong in *Brady*. *Id*., PageID 8769.

Evidence is to be considered "'favorable to an accused,'" when, "if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985), quoting *Brady*, 373 U.S. at 87; citing *Napue v. Illinois*, 360 U.S. at 269. Of the four statements by Chavis in the memorandum detailed above, the Court agrees with the Warden that the first three, in which he inquired how much time he would serve if he made a deal, and stated that he did not fire the fatal shot, are not favorable to Petitioner, as they do not support Petitioner's argument that he was not involved in the murders. However, Chavis's fourth statement—that Langbein was the other shooter—is favorable to Petitioner, as Chavis and Petitioner were the only two people tried for the murders. Moreover, that statement is consistent with the statements on the recordings, in which Chavis and another individual identified Langbein as the person who actually killed the victims. Thus, Petitioner has met the favorability prong of *Brady* as to: (a) the fourth statement in the memorandum; and (b) the recordings themselves.

### D.    Materiality

The Warden argues that, for the reasons discussed above regarding favorability, the memorandum and recordings are not material, exculpatory evidence, and thus, cannot form the basis of a *Brady* violation. In support, he claims that Petitioner, apart from a two-line exchange between Chavis and an "unidentified female," has failed to describe the substance of any of the other conversations on the tapes he has obtained, much less explain how those conversations are material, or are reasonably likely to lead to the discovery of material, exculpatory evidence (Memo. in Opp., ECF No. 122, Page ID 8759, citing Discovery Motion, ECF No. 120, Page ID 8738).

Further, as the Petitioner "already had ample reason to investigate Langbein as a possible alternate suspect[,]" *id.*, and his trial counsel extensively cross-examined Langbein, it is unclear that those isolated statements, by themselves, were so exculpatory that the jury's conviction and death recommendation were not worthy of confidence. *Id.*

Petitioner reiterates that the Court, in its materiality analysis, must consider the statement and recordings in conjunction with the rest of the evidence of record (Reply, ECF No. 123, Page ID 8771, citing *Kyles*, 514 U.S. at 436; *Gumm*, 775 F.3d at 364). He argues that, had his trial counsel been in possession of the memorandum and recordings, counsel would have used them "to suggest Langbein's guilt and argue that he attempted to frame Bethel." *Id.*, Page ID 8770, citing *D'Ambrosio v. Bagley*, 527 F.3d 489, 498-99 (6th Cir. 2008). At the very least, Petitioner claims, trial counsel would have had reason to ask Langbein on cross-examination whether he, and not Petitioner, had committed the murders for which Petitioner was convicted. Moreover, Petitioner argues, the memorandum and recordings would have been valuable additional evidence with which to impeach Langbein and undermine his credibility to the jury. Thus, he claims, the evidence would be admissible for that purpose. *Id.*, Page ID 8775, citing Ohio. R. Evid. 613; *State v. Reed*, 155 Ohio App. 3d 435, 2003-Ohio-6536, ¶ 30 (2nd Dist.); *Bies*, 775 F.3d at 400 n.9; *Gumm*, 775 F.3d at 369.

In *Kyles*, the Supreme Court set forth its standard for the materiality prong in *Brady* by holding that: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." 514 U.S. at 434. Neither the favorable statement in the memorandum nor the recordings, as described by Petitioner, meets that standard. Petitioner concedes that trial counsel had ample reason to investigate Langbein as a suspect, and

Petitioner has failed to explain how the statements contained in the memorandum and recording were so inculpatory as to Langbein that, had they been disclosed to his trial attorneys, would have caused them counsel to conduct a *more* aggressive cross-examination of the State's "star witness." Nor has Petitioner explained why the statement and recordings are of such import that, had they been disclosed, counsel's otherwise-reasonable trial strategy in deciding not to ask Langbein if he had committed the murders would be transformed into *de facto* malpractice. In sum, he has failed to explain why his claim as to trial counsel's not aggressively cross-examining Langbein arises under *Brady* rather than under *Strickland*.

Moreover, even assuming that the statements would be admissible against Langbein for impeachment purposes, their introduction still would not have undermined confidence in the verdict, as is required under *Kyles*. These statements must be viewed in light of the evidence that was introduced against Petitioner at trial. *See Eakes*, 592 F. App'x at 427 ("The materiality of *Brady* evidence depends almost entirely on the value of the undisclosed evidence relative to the other evidence produced by the state."). Petitioner confessed the murders to his then-girlfriend, Theresa Cobb Campbell, who recounted Petitioner's confession at trial (Opinion & Order, ECF No. 118, Page ID 8722, citing State Court Record, ECF No. 11-4, Page ID 237). Further, Petitioner made a proffer as part of a later-vacated plea agreement, which "was introduced at trial[,]" *id.*, Page ID 8723, and therein, Petitioner described his commission of the murders with Chavis in great detail:

> [K]illing Reynolds had been Chavis's idea, and before the murders, appellant and Chavis discussed what they were going to do. Appellant stated he and Chavis drove Reynolds and Hawks to a field belonging to Chavis's grandfather to do some shooting. After walking to a clearing, appellant, using a 9mm handgun, and Chavis, using a shotgun, fired at Reynolds and Hawks who were standing together; Reynolds with his arm around Hawks. Specifically, appellant stated that after the couple fell to the ground, he wanted to leave, but Chavis handed appellant another loaded clip and indicated he wanted to make sure the couple was dead. Appellant

explained that he then emptied the other clip into the bodies at close range. After the shooting, appellant drove to an alley where he threw his shirt into a dumpster, and then the pair drove to a body of water where Chavis separated the barrel from the shotgun and disposed of it in the body of water. Appellant described that he and Chavis proceeded to Chavis's house where they changed clothes and threw their clothes in a dumpster.

(State Court Record, ECF No. 11-4, Page ID 236).

Thus, even if—(a) the State had disclosed the memorandum and recordings to Petitioner prior to trial; (b) Petitioner's counsel had used the evidence to impeach Langbein; *and* (c) the jury found Langbein to be less credible, or even incredible, as a result of the impeachment evidence—there was more than enough evidence presented from which the jury could have reasonably found Petitioner to be guilty and recommended a death sentence. In sum, the evidence does not undermine confidence in the verdict, and thus is not material under *Brady*. *Kyles*, 514 U.S. at 434.

### E.   Requested Discovery

For the reasons discussed above Court cannot conclude that Petitioner has made a prima facie showing of a *Brady* violation as to the exculpatory statement and the recordings, as described by Petitioner. Given the similarities between the newly-obtained evidence and the requested discovery materials (Discovery Motion, ECF No. 120, Page ID 8734-35), the Court does not have "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief[.]" *Harris*, 394 U.S. at 300. Accordingly, Petitioner's instant Motion is no more well-taken than his previous one.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Petitioner's Renewed Motion for Leave to Conduct Discovery (ECF No. 120) and Petitioner's Motion to Stay (ECF No. 125). Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 48) remains pending before this Court.

November 13, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge