# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

:

    Petitioner,                                    Case No. 2:10-cv-391

:         District Judge Michael R. Barrett
   -vs-                                   Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

:

    Respondent.

## SUPPLEMENTAL OPINION ON MOTIONS FOR DISCOVERY AND TO STAY

This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner Robert Bethel's Renewed Motion for Leave to Conduct Discovery, (Motion for Discovery, ECF No. 120), and Motion to Stay Federal Habeas Proceedings (Motion to Stay, ECF No. 125), which the Magistrate Judge has denied ("Decision," ECF No. 128). On Petitioner's Objections ("Objections," ECF No. 131), and the Warden's Response. (ECF No. 132), District Judge Barrett recommitted the matter for additional analysis (ECF No. 133, PageID 8949). For the reasons set forth below, the Magistrate Judge recommends that Petitioner's Objections be overruled.

The relevant factual background and procedural history are recited in the Decision (ECF No. 128, PageID 8892-99).

1

**Standard for Review**

When a Magistrate Judge rules on a nondispositive matter, "[a] party may serve and file objections. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a). "The 'clearly erroneous' standard applies only to factual findings made by the Magistrate Judge, while h[is] legal conclusions will be reviewed under the more lenient 'contrary to law' standard." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) (Kinneary, J.), citing *Fogel v. Chestnutt,* 668 F.2d 100, 116 (2nd Cir. 1981). "The district court [is] bound to accept the magistrate's [findings of fact] unless they are clearly erroneous. A finding is clearly erroneous where it is against the weight of the evidence or where the court is of the definite and firm conviction that a mistake has been made." *Galbriath v. N. Telecom, Inc.*, 944 F.2d 275, 281 (6th Cir. 1991), *overruled on other grounds by Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 352 (6th Cir. 1997). "A magistrate's [*sic*] judge's decision is contrary to law if the magistrate has misinterpreted or misapplied applicable law. The contrary to law standard requires a district court to conduct an independent review of a magistrate judge's purely legal determinations." *Hood v. Midwest Sav. Bank*, No. C2-97-218, 2001 WL 327723, *2 (S.D. Ohio Mar. 22, 2001) (Holschuh, J.) (internal quotation marks and citations omitted).

Petitioner does not dispute that the Motion to Stay and the Motion for Discovery are non-dispositive pretrial matters within the initial decisional authority of a Magistrate Judge. However, he asserts these particular decisions were both clearly erroneous and contrary to law (Objections, ECF No. 131, PageID 8921).

## ANALYSIS – MOTION TO STAY

### A. Petitioner's New *Brady* Claim is Plainly Meritless

Petitioner objects to the Magistrate Judge's finding[1] "that the statements by Ronald Withers detailing co-defendant Jeremy Chavis's confession are subject to two levels of hearsay and therefore would be of limited use to bolster an earlier self-incriminating statement by Langbein. This is contrary to law for two reasons." (Objs., ECF No. 131, PageID 8925, citing Decision and Order, ECF No. 128, PageID 8904).

*First*, he argues, the statements by Withers are likely to lead directly to the discovery of admissible evidence, and thus can serve as the basis for a viable claim, regardless of whether Summary 86 (or the statements therein) would be admissible (Objs., ECF No. 131, PageID 8925, citing *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 465 (6th Cir. 2015)). Further, he argues regardless of whether the material at issue is admissible, the evidence could have been used to impeach Langbein, a purpose for which extrinsic evidence is allowed, and "could have opened new lines of cross-examination or witnesses to implicate Langbein—the State's main witness against Bethel—in the murders." *Id*. at PageID 8925-26, citing Ohio Evid. R. 616(A).

*Second*, he claims that Summary 86

> [I]s itself exculpatory, particularly if Chavis were called as a defense witness. If Chavis admitted to committing the murders with Langbein, the Warden's evidentiary arguments would be moot. If Chavis denied making the statements, the assertions he made would come in under Ohio R. Evid. 613(B) as a prior inconsistent statement.

(Objs., ECF No. 131, PageID 8926, citing *Bies v. Sheldon*, 775 F.3d 386, 400 n.9 (6th Cir. 2014); *Gumm v. Mitchell*, 775 F.3d 345, 369 (6th Cir. 2014); *State v. Reed*, 155 Ohio App. 3d 435, 2003-

---

[1] Petitioner calls this finding an "assertion." (Objections, ECF No. 131, PageID 892)5. His claim at the end of the same sentence that it is "contrary to law," implies the correct characterization: it is a conclusion of law.

3

Ohio-6536, ¶¶ 29-30 (2nd Dist.); Ohio R. Evid. 613(B)(2)(a)). Also, Petitioner claims that Statement 86 provides the "'corroborating circumstances' which would indicate the trustworthiness of the statement in which Langbein admitted to the murders[,]" the lack of which was the reason this Court denied his previous motion for evidentiary hearing. *Id*. at PageID 8927, quoting Opinion & Order, ECF No. 118, PageID 8726; citing *Bies*, 775 F.3d at 401 n.9; *Gumm*, 775 F.3d at 369; *State v. Landrum*, 53 Ohio St. 3d 107, 114 (1990).

Absent in Petitioner's objection is any indication of what admissible evidence was reasonably likely to be discovered had Summary 86 been produced. There must be something more than a barebones assertion that some admissible evidence might be discovered—especially when Summary 86 is itself inadmissible—to overcome the Supreme Court's statement that "[s]taying a federal habeas petition frustrates AEDPA's[2] objective of encouraging finality." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Petitioner's second objection—that the statements could have been brought in under Rule 613—is unavailing, and the cases he relies upon are inapposite. Both *Bies* and *Gumm* dealt with the inculpatory statements of a Roger Cordray, an unindicted suspect who had nonetheless "confessed to numerous people that he had murdered" the victim. *Bies*, 775 F.3d at 400. The Sixth Circuit held that those statements could have been introduced under Rule 613 had Cordray testified, or if he had asserted his Fifth Amendment privilege against testifying, "Cordray would have been unavailable under Ohio Rule of Evidence 804(A)(1) such that his prior confessions could have come in as statements against interest under Ohio Rule of Evidence 804(B)(3)." *Gumm*, 775 F.3d at 369; *accord*: *Bies*, 775 F.3d at 401 n.9. Thus, the nondisclosure of Cordray as a suspect, "[o]n its face . . . was an egregious breach of the State's *Brady* obligations." *Bies*, 775 F.3d at 400.

---

[2] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214.

Langbein, on the other hand, was known to Petitioner as a suspect, as he testified against both Bethel and Chavis. *State v. Chavis*, 10th Dist. Franklin Nos. 01AP-1456, 01AP-1466, 2003-Ohio-512, ¶ 42 (Feb. 4, 2003), *appeal not allowed at* 99 Ohio St. 3d 1436, 2003-Ohio-2902. Also, Petitioner's "trial counsel extensively cross-examined Langbein." (Decision and Order, ECF No. 128, PageID 8913 (citation omitted)). Moreover, while Chavis originally testified for the State the trial judge subsequently called Chavis as a court's witness so that the State could cross-examine him; "the prosecutor explained that he believed that Chavis's trial testimony was untruthful because it was inconsistent with statements Chavis had made to the police in November 2000." *Chavis*, 2003-Ohio-512, ¶ 40.

In light of the unreliability of Chavis's testimony and the limited probative value of the statements themselves, the Court should not conclude that Summary 86 provides "the 'corroborating circumstances that indicate the trustworthiness of the statement in which Langbein admitted to the murders." (Opinion & Order, ECF No. 118, PageID 8726.) Thus, even if Statement 86 had been disclosed to Petitioner's counsel and properly introduced under Rule 613, it still would not have created a reasonable probability of a different outcome, and thus, was not material. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citation omitted). Accordingly, a new *Brady* claim based on Summary 86 is still meritless, and Petitioner's Objection should be overruled.

### B.  **Petitioner has not demonstrated good cause for failing to present any new *Brady* claim to the state court**

Petitioner objects that, contrary to the Magistrate Judge's conclusion, he can show that the State suppressed Summary 86.[3] (Objs., ECF No. 131, PageID 8928-31) Yet, Petitioner concedes

---

[3] The Magistrate Judge assumed *arguendo* as to his Motion for Discovery that Petitioner could make such a showing, but did not with respect to the Motion to Stay. (Decision and Order, ECF No. 128, PageID 8906, 8908-09.)

in his Objections that he cannot "definitively assert when [Summary 86] came into his possession[.]"  *Id*. at PageID 8928.  Thus, even assuming that the discovery of Summary 86 constitutes a new *Brady* claim, Petitioner has not shown why his Motion to Stay complies with the one-year statute of limitations.  28 U.S.C. § 2244(d)(1).[4]  While the Warden, in his July 2, 2013, Return of Writ (ECF No. 58), did not raise statute of limitations as an affirmative defense, he did raise it in his memorandum *contra* the Motion to Stay—his first opportunity to do so—in the context of his argument that Petitioner was not raising a new, unexhausted *claim*, but rather unexhausted *evidence*.  (ECF No. 126, PageID 8884-85).  Moreover, "district courts are permitted, but not obliged, to consider, *sua sponte,* the timeliness of a state prisoner's habeas petition."  *Day v. McDonough*, 547 U.S. 198, 209 (2006), *abrogating Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002).

> Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions. Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred.

*Id*. at 210 (internal quotation marks and citations omitted).

In this case, Petitioner has had two opportunities—his reply memorandum (ECF No. 127) and his Objections to the Magistrate Judge's Decision and Order (ECF No. 131)—to articulate how his Motion to Stay, as to his purportedly new *Brady* claim, satisfies the AEDPA statute of limitations, and he has not done so.  Further, as the statute of limitations only became an issue upon the filing of Petitioner's Motion to Stay, there has been no "delayed focus on the limitation issue[.]"  *Day*, 547 U.S. at 210.  Finally, as to "whether the interests of justice would be better

---

[4] Indeed, the only indication Petitioner gives of when he may have obtained Summary 86 is a statement, without citation or verification, in his Motion to Stay, stating that "[C]ounsel for Bethel obtained those records on April 7, 2017.  Those records included . . . Summary 86[.]"  (ECF No. 125, PageID 8875). The Court notes that the Motion for Discovery was not filed until May 1, 2018 (ECF No. 120), and the Motion to Stay was not filed until October 9, 2018 (ECF No. 125).  Thus, even if the Court were to use the date set forth by Petitioner previously, neither motion would be timely under 28 U.S.C. § 2244(d)(1).

6

served by addressing the merits or by dismissing the petition as time barred[,]" *Day*, 547 U.S. at 210, the Magistrate Judge, in his original Decision and Order, took particular note of the fact that Petitioner had given "no indication of when he discovered Summary 86 . . . . Without more, he has not demonstrated good cause as to why, five years after filing his Amended Petition, he is just now seeking to return to state court." (ECF No. 128, PageID 8906; *see also* ECF No. 48 (Amended Petition filed March 4, 2013)). In other words, the Magistrate Judge was skeptical, based on the evidence before the Court, that the claim was timely under 28 U.S.C. § 2244(d)(1), such that AEDPA's preference for finality should be overridden. *Rhines*, 544 U.S. at 277. While Petitioner articulates *how* he obtained Summary 86—from the Columbus, Ohio, Police Department in response to a public records request (Objections, ECF No. 131, PageID 8929)—he does not articulate *when* he obtained it, and indeed, concedes he cannot. *Id*. at PageID 8928. To allow Petitioner to return to the state court without making any showing of timeliness would violate the purpose of AEDPA. In sum, even in light of his Objections, that Petitioner has failed to demonstrate good cause for his delay. For that reason, the Decision on the Motion to Stay should not be reversed.[5]

## ANALYSIS – MOTION FOR DISCOVERY

### A. Suppressed Evidence was not Material

Petitioner argues that the evidence contained in Summary 86 was material because "it undercut and implicated" Langbein, "the key witness against Bethel at trial." (Objs., ECF No.

---

[5] In his Objections, Petitioner notes that "[t]he Magistrate Judge also cited the Warden's arguments that *Carter v. Mitchell*, 829 F.3d 455 (6th Cir. 2016) precludes staying this case, but he did not appear to rely on those arguments in his decision." (Objs., ECF No. 131, PageID 8931, citing Decision and Order, ECF No. 128, PageID 8905.) Indeed, the Magistrate Judge did not rely on *Carter* in the Decision and thus, the Court need not examine Petitioner's alternative objection that any such reliance was contrary to law.

131, PageID 8933.) That Bethel's attorneys had ample motive to investigate Langbein as a suspect is all the more reason, Bethel says, that the documents were material. In other words, Petitioner claims, just because the impeachment at trial failed doesn't mean that more impeachment evidence—especially evidence of this quality—would have been useless. *Id.*, quoting *Robinson v. Mills*, 592 F.3d 730, 737 (6th Cir. 2010). Petitioner argues that:

> It is one thing for defense counsel to theorize to the jury that Langbein was responsible for the murders, and to encourage the jury to disbelieve Langbein. It is quite another to have statements from Langbein himself apparently admitting that he had committed the murders, as well as corroborating statements from the co-defendant.

*Id.*

Petitioner objects to the Magistrate Judge's conclusion that, in light of the testimony of Petitioner's then-girlfriend, Theresa Cobb Campbell, and the admission of Petitioner's extensive proffer (originally made as part of a plea agreement, which was withdrawn after Petitioner refused to testify against Chavis), the absence of Summary 86 did not result in a verdict unworthy of confidence, and thus, the suppressed material could not serve as the basis for further discovery. (Objs., ECF No. 131, PageID 8934, citing Decision and Order, ECF No. 128, PageID 8914.) Petitioner argues that, for several reasons, Campbell's testimony and the proffer were unreliable, rendering it "clearly erroneous and contrary to law to discount the suppressed evidence[.]" *Id.*

*First*, Petitioner notes, "[a]ccording to her own mother, Bethel's girlfriend suffered from delusions and concocted stories in her mind that were not necessarily true. . . . Her mother even called the trial court to say that she did not believe her daughter should be testifying against Bethel." (Objections, ECF No. 131, PageID 8934, citing Cobb Aff., ECF No. 54-9, PageID 2987-88, ¶¶ 3-6). The only evidence relied upon by Petitioner in support of the above argument is an affidavit of her mother, Earl Cobb, attested to on January 6, 2005 (Cobb Aff., ECF No. 54-9, PageID 2988), more than sixteen months after Petitioner was sentenced to death (ROW App'x,

8

ECF No. 54-9, PageID 2855). There are no medical records or opinions from health professionals regarding Campbell's mental state at the time of her testimony. As the Warden points out, Petitioner cites no evidence of record that Cobb's affidavit, or any other evidence regarding Campbell's mental state, was before the trial court prior to 2005. Nor was there any evidence that the State knew, or should have reasonably known, of any concerns regarding Campbell's mental health, and any impact her health may have had on her credibility. (Resp. to Objs., ECF No. 132, PageID 8946). As there would have been no reason to impeach her testimony on those grounds, the testimony was properly presented to the jury, and may be considered as part of the Court's materiality analysis. *See Robinson*, 592 F.3d at 735 ("[T]he key issue for us to resolve under *Brady* is the third prong - whether the withheld impeachment evidence is 'material' to [the petitioner's] jury conviction when viewed in light of the other evidence presented at trial.").

*Second*, Petitioner directs the Court to the affidavit of Deborah Davis, Ph.D., a psychologist who had researched and published extensively on the issue of false confessions. (Davis Aff., ECF No. 54-9, PageID 2995, ¶ 1). Based on that experience and her knowledge of the case, Dr. Davis opined that "a number of factors existed in this case that are known to promote false confession." *Id*. at PageID 2999, ¶ 7. Specifically, Dr. Davis opined that Petitioner "was led to believe that his choices were to either go to trial and get the death penalty or plea bargain. The horrors of death row and execution were described to him in graphic detail." *Id*. at PageID 3000. Petitioner "was aware that his attorneys had refused to prepare his case. He correctly observed that he had no hope of a prepared, competent defense." *Id*. Law enforcement "confronted" Petitioner "with his mother's desperate plea for him to do what was necessary to live (*i.e.*, take the deal)." *Id*. "Finally, the defendant had substantial prior knowledge relevant to the crime, due to his acquaintance with many involved parties and other relevant information. Also, he was shown or told about evidence,

9

including the coroner's report, by his attorneys and the state." *Id*. Taken together, Petitioner argues, these factors rendered Petitioner's confession false and unreliable, and consequently, his proffer was not evidence upon which the jury could reasonably rely to convict him. (Memo. in Opp., ECF No. 131, Page ID 8935, citing *Crane v. Kentucky*, 476 U.S. 683, 689 (1986): "Confessions, even those that have been found to be voluntary, are not conclusive of guilt."). Yet, expert testimony was never elicited by Petitioner's attorneys as to the "counterintuitive" notion of why he would confess to a crime he did not commit. *Id*., citing Davis Aff., ECF No. 54-9, PageID 2996.

Petitioner's Objections suffer from the same flaw as his Motion for Discovery—he has failed to articulate why the claim for which he seeks discovery arises under *Brady*, rather than as an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner believed he had no hope of competent representation, and his decision to provide a confession, even one that he now claims is false, was, if anything, the result of deficient legal advice and representation, rather than the product of any wrongfully withheld evidence. He does not argue, for example, that the disclosure of Summary 86 would have caused his attorneys to advise him against accepting the plea agreement and making the proffer. Nor does he claim that the introduction of Summary 86 (assuming it could get past the above-discussed admissibility issues) or similar materials at trial would have caused the trial judge to exclude his proffer, or that the jury could not have reasonably found the proffer to be reliable inculpatory evidence. Moreover, the failure to introduce expert testimony regarding why Petitioner would provide a false confession is a failure by his attorneys, and has nothing to do with any supposedly suppressed evidence. The Magistrate Judge reaffirms his conclusions that the proffer was valid evidence for the jury to consider, and given its breadth and depth, was more than enough evidence upon which the jury

could reasonably find Petitioner guilty. Petitioner's objection as to materiality should be overruled.

B. **The Decision properly relied upon *Harris v. Nelson* and properly applied Habeas Rule 6 in denying discovery**

Petitioner argues that "[t]he Magistrate Judge ruled contrary to law when he relied on the language in *Harris* that there is no 'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief.'" (Memo. in Opp., ECF No. 131, PageID 8937, quoting Decision and Order, ECF No. 128, PageID 8915; *Harris v. Nelson*, 394 U.S. 286, 300 (1969).) He claims that "[t]he Magistrate Judge failed to recognize that Habeas Rule 6, adopted several years after *Harris*, authorizes wider discovery. The Supreme Court's decision in *Blackledge v. Allison*, . . . suggested that federal judges utilize prehearing discovery as one means of determining *whether* there is a factual basis for the petitioner's claims." *Id*. (emphasis in original), citing 431 U.S. 63, 76, 82-83 (1977); Rule 6 of the Rules Governing Section 2254 Cases. Further, he argues that the Supreme Court, in *Bracy v. Gramley*, "omitted any reference to *Harris*'s "prima facie" language, relying instead on a considerably more forgiving formulation of the "good cause" rule, which only requires some "*reason to believe* that the petitioner *may, if* the facts are fully developed, be able to demonstrate that he is…entitled to relief." (Objs., ECF No. 131, PageID 8938 (emphasis in original), quoting *Bracy*, 520 U.S. 899, 908-09 (1997); citing *Bracy*, 520 U.S. at 902, 903 n.3; *High v. Head*, 209 F.3d 1257, 1264 n.8 (11th Cir. 2000).) He claims that the evidence contained in Summary 86 goes well beyond the theoretical, speculative, and unsupported evidence put forward by the petitioner in *Bracy*. Rather, "[t]he evidence here not only would impeach Langbein, the main witness against Bethel, but goes to the question at the heart of the case: whether Bethel was the actual second

11

shooter, or whether it was Langbein." Thus, failure to disclose the statement "is an 'egregious breach of the State's *Brady* obligations.'" *Id*., quoting *Bies*, 775 F.3d at 400; citing *Bracy*, 520 U.S. at 905, 909. In circumstances such as these, Petitioner claims, the "Sixth Circuit has not been reluctant to grant habeas corpus relief when the state suppresses evidence impeaching key prosecution witness[,]" *id*. at PageID 8939, citing *Robinson,* 592 F.3d at 736-37; *Jamison v. Collins*, 291 F.3d 380, 391 (6th Cir. 2002), and the Court should similarly grant discovery here.

Petitioner's Objection is unavailing for two reasons. *First*, as the Warden notes, any argument that Habeas Rule 6 abrogated or lessened the authority of *Harris* is belied by the Supreme Court's statement in *Bracy* that "Habeas Corpus Rule 6 is meant to be consistent with *Harris*." (Resp. to Objs., ECF No. 132, PageID 8946-47, quoting *Bracy*, 520 U.S. at 908-09). *Second*, the Sixth Circuit cases cited by Petitioner precede the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011), which greatly limited the ability of district courts to permit discovery and evidentiary hearings in *habeas* cases; indeed, a majority of trial courts within the Sixth Circuit have interpreted *Pinholster* as barring from consideration any discovery requested and produced during federal habeas review. (Decision and Order, ECF No. 128, PageID 8907 (collecting cases)). The Decision conceded that "Petitioner's efforts to obtain the [discovery] materials, . . . suggested that he has been diligent in attempting to obtain all materials supporting his *Brady* claim." *Id*. at PageID 8908. Further, the Magistrate Judge concluded that "[i]f he was unable to do so because of improper suppression by the State, then the *Pinholster* limitation is inapplicable, and the Court must review Petitioner's *Brady* claim with new evidence." *Id*. Nonetheless, *Pinholster*, at the very least, reinforces the need for a showing of favorability and materiality. More importantly, because *Harris* is still good law, for a Petitioner to obtain leave to conduct discovery, this Court must have "reason to believe that the petitioner may, if the facts are

fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Harris*, 394 U.S. at 300.

Petitioner objects to the Magistrate Judge's finding that, although Petitioner had "'met the favorability prong of *Brady* as to: (a) the fourth statement in the memorandum [that Langbein was the other shooter]; and (b) the recordings themselves' of Chavis's calls from prison[,]" the Motion for Discovery was still denied "on the basis that the favorable, suppressed evidence was not material, even though it undercut and implicated the key witness against Bethel at trial." (Objs., ECF No. 131, PageID 8933, quoting Decision and Order, ECF No. 128, PageID 8912.) In so objecting, Petitioner does not appear to dispute the Magistrate Judge's conclusion that the first three statements in the memorandum were not sufficiently favorable to merit discovery. (Decision and Order, ECF No. 218, PageID 8910-12.) Petitioner argues that the statement and recordings are material—that is, "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Materiality must be viewed in the context of the other evidence that was submitted to and considered by the jury at the time of trial. *Robinson*, 592 F.3d at 736-37; *Eakes v. Sexton*, No. 14-5017, 592 F. App'x 422, 427 (6th Cir. 2014).

Petitioner argues that "[i]t was clearly erroneous and contrary to law to discount the suppressed evidence in light of the existing evidence from Bethel's girlfriend or the proffer, both of which were unreliable." (Objs., ECF No. 131, PageID 8934, citing Decision and Order, ECF No. 128, PageID 8914). For the reasons discussed above, the Magistrate Judge cannot conclude that they were so unreliable that the trial judge erred in allowing Campbell's testimony and Petitioner's proffer to be considered by the jury. Petitioner is correct that "[t]he materiality of

13

suppressed evidence must be measured by the *cumulative effect* that evidence has on the validity of the jury's verdict." *Id*. at 8940 (emphasis in original), citing *Kyles*, 514 U.S. at 440-41. However, the evidence against Petitioner was overwhelming:

> This is not a case in which the evidence weighs heavily against conviction; the jury's verdict was not a manifest miscarriage of justice. Rather, it is a case in which the defendant admitted guilt on three separate occasions, in which those admissions are fully consistent with the physical evidence, and in which the defendant had a strong motive to kill the victims.

*State v. Bethel*, 110 Ohio St. 3d 416, 2006-Ohio-4853, ¶ 111 (2006) (citation omitted). Consequently, the statement and recordings—even if Petitioner's trial counsel had used them both to (further) impeach Langbein and present him as a possible alternative perpetrator—are not enough to conclude that the jury verdict was unworthy of confidence. Thus, the evidence is not material under *Bagley*, and cannot serve as a basis for further discovery.

## CONCLUSION

For the foregoing reasons, Petitioner's Objections (ECF No. 131) should be overruled.

February 8, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge